**BONNIE & COMPANY FASHIONS, INC. and Bonnie Boerer, individually, Plaintiffs,**

v.

**BANKERS TRUST COMPANY, Defendant.**

No. 91 Civ. 0341 (DNE).

United States District Court, S.D. New York.

Aug. 21, 1998.

adjustment is warranted under the Changes Clause, requires compliance with the notice provisions of that clause.

Michael M. Rosenbaum, Richard M. DeAgazio, Budd Larner Gross Rosenbaum, New York City, for Bonnie & Company Fashions, Inc., Bonnie Boerer.

David B. Eizenman, Roni Schneider, Loeb and Loeb, New York City for Bankers Trust Co.

## OPINION & ORDER

EDELSTEIN, District Judge.

This case involves a commercial dispute over a factoring agreement. The facts and procedural history of this action have been previously set forth and thus familiarity is assumed. *See Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 945 F.Supp. 693 (S.D.N.Y.1996). Accordingly, only the facts necessary to resolve the instant matter will

be reviewed. Currently before this Court is Defendant's, Bankers Trust Company ("BTC"), motion to dismiss for want of subject matter jurisdiction.

### Facts

Bonnie & Company Fashions, Inc. ("Bonnie & Co.") was incorporated in New Jersey on October 11, 1983 for the purpose of manufacturing and selling of women's clothing. On December 1, 1983, Bonnie & Co. applied for authority to conduct business in New York. Bonnie & Co. then entered into a factoring agreement with BTC in June 1984. Complaint ¶ 8. On January 2, 1990, Bonnie & Co. notified BTC that it had adopted a plan of liquidation and that it was terminating the Factoring Agreement 60 days thereafter. (Letter from M. David Baker, Esq. to John F. Contrucci of 1/2/90.)

On January 15, 1991, Plaintiffs initiated this action based upon diversity jurisdiction. The Complaint alleges that Plaintiffs are New Jersey citizens and that the corporation's principal place of business was New Jersey. Complaint ¶ 1. The Complaint also states that BTC is a New York corporation, with its principal place of business in New York. *Id.* ¶ 2. Defendant, until new, had never challenged this court's jurisdiction.[1]

Defendant alleges that Bonnie & Co.'s principal place of business was New York and thus diversity jurisdiction is lacking. Accordingly, BTC asserts that this action must be dismissed. In support of their allegations, Defendant argues that Plaintiffs are judicially estopped from arguing that Bonnie & Co.'s principal place of business was anywhere but New York because Plaintiffs represented to the United States District Court for the Southern District of Florida that the corporation was a New York Citizen. *See* Bankers Trust Company's Supplemental

---

1. In a 1996 Opinion, this Court found that each of the parties relationship to New York, and thus determined that New York law governed the substantive matters of the case. *See Bonnie & Com-* *pany Fashions, Inc. v. Bankers Trust Co.*, 945 F.Supp. 693, 704 (S.D.N.Y.1996). However, the 1996 opinion did not address whether this Court had subject matter jurisdiction over the case.

Memorandum of Law in Support of Motion to Dismiss at 1–2.

In the alternative, Defendant argues that Bonnie & Co.'s last principal place of business was New York. In support of this argument, Defendant asserts that the company's actions indicate that its principal place of business was New York. BTC states that 1407 Broadway, New York, New York was the place where Bonnie & Co. had its main office, and had its most extensive contract with and greatest impact upon the general public. Memorandum of Law in Support of Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction at 3–4. Defendant also states that Bonnie & Co.'s "Additional Terms" to its form contracts establish that Bonnie & Co.'s principal place of business was New York. For example, BTC notes that the "Additional Terms" provided that customer requests for authorization to return merchandise must be made to 1407 Broadway, New York, New York, see Additional Terms of Contract ¶ 3 between customers and Bonnie & Co. shall be brought in a New York State court and governed by New York law. Id. ¶ 4.

Moreover, BTC argues that Plaintiffs made representations that demonstrate that Bonnie & Co.'s principal place of business was New York. For instance, Defendant states that in Bonnie & Co.'s application to conduct business in New York, Bonnie & Co. identified its office as 1407 Broadway, New York, New York. See Application of Bonnie & Co. and Company Fashions, Inc. for Authority to Conduct Business in the State of New York ¶ 4 attached to Affidavit of David B Eizenman in Support of Defendants Motion to Dismiss ("Eizenman Aff.") as Ex. 3. Additionally, BTC maintains that in the Factoring Agreement, Bonnie & Co. represented and warranted that 1407 Broadway, New York, New York was its principal place of business, and the office where its books and records would be maintained. See Factoring Agreement ¶ 4.3 attached to Eizenman Aff. as Ex. 4; Certificate of Resolutions and Incumbency attached to Eizenman Aff. as Ex. 4. BTC further asserts that Bonnie & Co.'s bookkeep-

er testified that 1407 Broadway, New York, New York was its business. Deposition of Zeena Kaufman at 39.

Plaintiffs, in response, argue that Bonnie & Co.'s principal place of business, at all times, was New Jersey. First, Plaintiffs contend that Bonnie & Co.'s principal place of business prior to adopting its plan of liquidation was New Jersey. Plaintiffs' Memorandum of Law in Opposition to Bankers Trust Co.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction at 2. In support of this assertion Plaintiffs state that although some administrative functions were performed in the company's showroom in New York, "Bonnie & Co.'s true 'locus of operations' and 'nerve center' were in New Jersey" where the company's director and key employees formulated corporate policy and performed all of the design work.[2] Id. Additionally, Plaintiffs state that New Jersey was where the company's inventory was maintained, invoiced and shipped to customers. Id.

Second, Plaintiffs argue that Bonnie & Co.'s last principal place of business after liquidation was New Jersey. Plaintiffs claim that Bonnie & Co. did not become an inactive corporation until ten months after its New York office was closed. Id. at 1–2. In that time period, Plaintiffs assert, the company conducted "substantial business activity" at its headquarters in New Jersey. Id. at 2. The business activity, conducted by full-time employees, included collecting $4 million in outstanding receivables from sales, reconciling Bonnie & Co.'s factor account with BTC and reconciling and paying sales commissions. Id.

### Discussion

*Judicial Estoppel*

BTC argues that Plaintiffs are judicially estopped from claiming that Bonnie & Co.'s principal place of business is New Jersey because Plaintiffs, in a previous litigation, represented to a United States District Court for the Southern District of Florida that Bonnie & Co. was a New York citizen

---

**2.** Bonnie & Co.'s primary sales force consisted of independent sales agents located in regional lo- cations throughout the country, where two-thirds of its sales occurred.

with its principal place of business in New York. On June 27, 1990, Plaintiffs filed with the United States District Court for the Southern District of Florida removal papers in a Florida action in which they stated that Bonnie & Co. was a "New York corporation with its principal place of business in New York," and was a New York citizen. Notice of Removal at 1, *eMTe Corp. v. Bonnie & Co. & Co. Fashions, Inc.* No. 90–1497 (S.D.Fl. 1990) attached as Exhibit 1 to Affidavit of John D. Boykim, Esq. in Further Support of Motion to Dismiss ("Boykim Aff."). Thereafter, in February 27, 1991 and April 29, 1991 Plaintiffs again represented that Bonnie & Co. was a New York corporation.[3] *See* Stipulation, *eMTe Corp.* No. 90–1497 attached as Ex. 2 to Boykin Aff; April 29, 1991 Joint Pre–Trial Stipulation, *eMTe Corp.* No. 90–1497 attached as Ex. E to Schneider Aff.

Judicial estoppel prevents a party in a legal proceeding from asserting a position that is inconsistent with one which the party has previously set forth in a prior legal proceeding. *Bates v. Long Island Railroad Co.*, 997 F.2d 1028, 1037 (2d Cir.1993). The purpose behind the doctrine is to protect both the sanctity of the oath "by demanding absolute truth and consistency in all sworn positions", *and* the integrity of the judicial process "by avoiding the risk of inconsistent results in two proceedings." *Id.* at 1037–38. Thus, the party invoking judicial estoppel must establish that "(1) the party against who judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." *AXA Marine and Aviation Ins., Ltd. v. Seajet Industries, Inc.*, 84 F.3d 622, 628 (2nd Cir.1996) citing *Bates*, 997 F.2d at 1038.

The Second circuit has recently held that "estoppel only applies when a tribunal in a prior proceeding has accepted the claim at issue by rendering a favorable decision." *Si-*mon *v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir.1997). By doing so, the Second Circuit has limited "judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.*

Here, BTC has met the first element by establishing that Plaintiffs, on more than one occasion in the Florida action, set forth that Bonnie & Co. was a New York citizen for diversity purposes. However, BTC falls short on the second element. Plaintiffs' inconsistent statement was not adopted by the Florida District Court in any manner. Indeed, even Plaintiffs' notice of removal, BTC's best chance for establishing judicial adoption of Plaintiffs' prior inconsistent position, does not suffice. A notice of removal cannot trigger judicial estoppel because under 28 U.S.C. § 1446, notice of removal is not treated as a motion or application to the court. Instead, the notice is effective without judicial approval, unless a remand is ordered. *Adler v. Adler*, 862 F.Supp. 70, 72 (S.D.N.Y.1994) (citing *Ullah v. Federal Deposit Ins. Corporation*, 852 F.Supp. 218, 220 (S.D.N.Y.1994)). Therefore, the court does not adopt what is contained in the notice of removal. Accordingly, Plaintiffs' prior inconsistent position could not have been adopted by the prior court.[4] Whereas BTC cannot meet its burden as to the second element of the Second Circuit's test for judicial estoppel, their motion for judicial estoppel must be denied. *See A.I. Trade Finance v. Centro Internationale Handelsbank*, 926 F.Supp. 378, 390 (S.D.N.Y. 1996).

*Diversity Jurisdiction*

It is well established that in order for a federal court to have subject matter jurisdiction based on the diversity of the parties, there must be complete diversity. *C.T. Carden v. Arkoma Associates*, 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (citing

---

**3.** It must be noted that these two submissions were filed by the same counsel whom initiated the instant action against BTC by claiming diversity jurisdiction based on Plaintiffs status as a New Jersey citizen.

**4.** Additionally, the plaintiff in the Florida action, eMTe, never made a motion for remand. Thus, the issue of Bonnie & Co.'s prior inconsistent statement was never adjudicated and therefore could not possibly have been adopted by the Florida District Court.

*Strawbridge v. Curtiss,* 7 U.S.(3 Cranch) 267, 2 L.Ed. 435 (1806)). Specifically, the residency of all of the plaintiffs must be different from that of all the defendants. *Airlines Reporting Corp. v. S and N Travel, Inc.,* 58 F.3d 857, 861 (2d Cir.1995).

▇ When determining whether diversity jurisdiction exists, a court must rely on the citizenship of the parties at the time the action was commenced. *See Maryland Casualty Co. v. W.R. Grace & Co.,* 23 F.3d 617, 622 (2d Cir.1993) (citing *Anderson v. Watt,* 138 U.S. 694, 702–03, 11 S.Ct. 449, 34 L.Ed. 1078 (1891)). For diversity purposes, a corporation is a resident of the state of its incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c). However, when a corporation is inactive at the time the suit was tiled, the Second Circuit has ruled that residency is determined by the corporation's state of incorporation *and* the state where the corporation last transacted business. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131 (2d Cir.1991). This is because an inactive corporation's principal place of business is considered to be the state where the corporation last transacted business. *Pinnacle Consultants, Ltd. v. Leucadia National Corporation,* 101 F.3d 900 (2d Cir.1996); *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 608 F.Supp. 1261 (S.D.N.Y.1985), *aff'd in relevant part,* 933 F.2d 131 (2d Cir.1991) (citing *Puerto Rico Maritime Shipping Authority v. Star Lines, Ltd.,* (S.D.N.Y. Nov. 22, 1979)).

Here, it is undisputed that Bonnie & Co. was an inactive corporation at the time this lawsuit was filed. It is also undisputed that Bonnie & Co. was incorporated in New Jersey. Thus, the issue of whether diversity jurisdiction exists here hinges solely on the determination of the state in which Bonnie & Co. last transacted business.[5]

BTC argues that Bonnie & Co. last transacted business in New York. In support of this argument BTC asserts that Bonnie & Co.'s main office, sales force and showroom were all located at 1407 Broadway, New York, New York. It is noted that the New York showroom was a strong marketing and sales tool for Bonnie & Co. Included in the employees staffed in the New York office were Bonnie & Co.'s National Sales Manager, the Vice President and Import Manager, the Credit Manager and the Bookkeeper. As previously stated, the bookkeeper testified that 1407 Broadway, New York, New York was Bonnie & Co.'s principal place of business. In addition, BTC notes that the corporation paid rent on this office space and kept doing business at this location until at least December 20, 1989 when the showroom was closed forever.

Plaintiffs, on the other hand, argue that Bonnie & Co. last transacted business in New Jersey thereby making New Jersey its principal place of business. Plaintiffs raise two points in support of its argument. First, Plaintiffs maintain that Bonnie & Co. continued to do business in New Jersey for ten months after it adopted a plan of liquidation in January, 1990. Second, Plaintiffs assert that prior to adopting its plan for liquidation, Bonnie & Co last transacted business at its principal place of business in New Jersey. Accordingly, Plaintiffs argue, under both scenarios, Bonnie & Co. last transacted business in New Jersey.

▇ With regard to its first argument, Plaintiffs note that subsequent to January, 1990, Bonnie & Co. vacated its office in New York but maintained its office in New Jersey. From there, Plaintiffs assert that Bonnie & Co. "conducted substantial business activity, including: the collection of receivables generated by the sale of its holiday 1989 line; the reconciliation of its factor account with BTC; and the reconciliation and payment of sales

---

5. As set forth in the statement of facts, both parties originally made the argument that Bonnie & Co.'s principal place of business is determinative here for diversity purposes. These arguments are flawed. As noted above, because Bonnie & Co. was in inactive corporation at the time this action was commenced, diversity jurisdiction is determined by the corporation's state of incor- poration and the state where the corporation last transacted business. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131 (2d Cir.1991). Accordingly, this Court had the parties submit supplemental papers on the issue of where Bonnie & Co. last transacted business.

commissions." Bonnie & Co. Brief it 6. All it this work, Plaintiffs claim, was done by full time employees. *Id.* at 7.

This Court is not convinced that the work conducted by Bonnie & Co. after January, 1990 falls under business transactions as the purpose of this work was not to manufacture and sell women's clothing. Indeed, Bonnie & Co.'s work would more appropriately be considered a winding down of affairs. Although one court has recognized such work as constituting business, *see Comtec, Inc. v. National Technical Schools,* 711 F.Supp. 522 (D.Ariz.1989), this Court does not construe it as such.[6]

■ Plaintiffs' reliance on *Raine v. Entertainment Acquistion Co.* is inapposite. In *Raine,* the court held that a corporation was not inactive because it had continued to engage in substantial business activity, including the negotiation and execution of a distribution agreement as well as the retention of the rights to audit distributers. 1996 WL 428394 at * 2–4 (S.D.N.Y.1996). In addition, the corporation held annual shareholder meetings and paid the salaries of corporate officers. *Id.* at * 4. Here, although Bonnie & Co. had paid employees at this time, it did not attempt to negotiate or enter into any contracts or engage in any other activity which would amount to a business transaction. Indeed, this case more closely resembles *Interpetrol Bermuda, Ltd. v. Rosenwasser* where the court held that a corporation had not transacted business when it had not entered contracts, generated income or employed paid personnel. 1987 WL 7734 * 1–2 (S.D.N.Y.1987).

Accordingly, this Court finds that the work that Bonnie & Co. engaged in after January, 1990, does not constitute business transactions. Therefore, Plaintiffs' argument that Bonnie & Co. transacted business in New Jersey subsequent to adopting its plan of liquidation, making New Jersey the state in which it last transacted business, must fail.

■ Nevertheless, Plaintiffs, with their second argument, assert that they still meet the test for diversity jurisdiction under *Wm. Passalacqua* because they claim that Bonnie & Co.'s last business transactions, before adopting a plan of liquidation, occurred in New Jersey at its principal place of business. Plaintiffs maintain that Bonnie & Co.'s New Jersey warehouse was actively transacting business from September 1989 through November 30, 1989 by filling orders and shipping their 1989 Holiday line. In addition, Plaintiffs state that Bonnie Boerer, President of Bonnie & Co., acting on behalf of Bonnie & Co., transacted business in New Jersey during October 1989 by designing Bonnie & Co.'s Fall 1990 line. As for the argument set forth by BTC, Plaintiffs assert that the New York showroom essentially became inactive after "market week" and other sales activities that occurred during early September 1989. Thus, Plaintiffs argue, Bonnie & Co. last transacted business in October and November, 1989 in New Jersey.

This Court disagrees. Bonnie & Co. last transacted business in New Jersey in late November, 1989. However, it is undisputed that Bonnie & Co.'s New York showroom remained open through at least December 20, 1989. Plaintiffs have noted that the New York showroom was "essentially inactive" in December 1989, but do not assert that it was completely inactive. This, of course, indicates that business activity was conducted in New York during this period.

■ Whereas the duty to prove diversity jurisdiction lies with the party claiming diversity jurisdiction, *see McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 188–89, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Kato v. County of Westchester,* 927 F.Supp. 714, 715 (S.D.N.Y.1996), Plaintiffs have the burden of demonstrating that no business transactions occurred in New York after November 30, 1989, the time which Plaintiffs declare was the corporation's last transaction of business before liquidating. Plaintiff has failed to meet this burden. Accordingly, this Court

**6.** The Second Circuit has never specifically addressed the issue of what constitutes a business transaction for an inactive corporation. However, this Court reads footnote five in *Pinnacle Consultants* to imply that a business transaction for an inactive corporation is one that is goes toward the furtherance of the corporation. *See Pinnacle Consultants, Ltd. v. Leucadia National Corp.,* 101 F.3d 900, 907 n.5 (2d Cir.1996).

finds that New York was the state in which Bonnie & Co. last transacted business. Thus, under the test set forth by the Second Circuit in *Passalacqua* and reiterated in *Pinnacle Consultants*, Bonnie & Co. is considered to be a resident of New York. Since BTC is also a resident of New York, diversity jurisdiction is lacking and this case must be dismissed.

■ This Court, however, relying on § 205(a) of the New York Civil Practice Law and Rules, dismisses this action without prejudice to refiling of the action in state court despite the fact that the State's statute of limitations might have otherwise lapsed.[7] *See Diffley v. Allied–Signal, Inc.,* 921 F.2d 421 (2d Cir.1990); *Reynolds v. Mercy Hospital,* 861 F.Supp. 214, 224 (W.D.N.Y.1994). Section 205(a) provides:

> [i]f an action is timely commenced and is terminated in any other manner than by voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff ... may commence a new action upon the same transaction ... within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action.

N.Y.Civ.Prac.Law § 205(a).

The Second Circuit has held that lack of subject matter over an action may be a basis for invoking § 205(a) of the New York Civil Practice Law and Rules. *See Diffley v. Allied–Signal, Inc.,* 921 F.2d at 423. Since Plaintiffs' action satisfies the requirements of § 205(a) in that: (1) Plaintiffs' initial action was timely commenced; (2) the dismissal of this action by lack of subject matter is not termination "by voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits," *id.,* and the new cause of action arises out of the same transactions as this case, this Court is obligated to dismiss

this action without prejudice. *See Diffley v. Allied–Signal, Inc.,* 921 F.2d at 425.

SO ORDERED.

---

**7.** Defendant requests that if this Court dismiss this action, it do so with prejudice because before this action was commenced, Plaintiffs had previously sued BTC in state court. Defendants, however, do not state that Plaintiffs are not entitled to refile their action, nor does this Court find anything in § 205(a) of the CPLR or the case law that suggests that Plaintiffs are prohibited from refiling because they had previously filed their action in state court. Accordingly, Defendant's request is denied.