98 F.Supp.2d 1081 (2000)
Iceline D. FLYNN, et al., Plaintiffs,
v.
TEAK ASSOCIATED INVESTMENTS # 2, INC., Defendant.
No. 4:99CV1769 TCM.
United States District Court, E.D. Missouri, Eastern Division.
May 22, 2000.
William Edward Taylor, Joseph M. Taylor, Taylor and Taylor, P.C., St. Louis, MO, for plaintiffs.
J. Michael Waller, Law Offices of Robert J. Hayes, Jerome C. Simon, Partner, Rabbitt and Pitzer, St. Louis, MO, for defendant.

*1082 MEMORANDUM AND ORDER

MUMMERT, United States Magistrate Judge.
This is an action sounding in negligence filed by Missouri residents against a corporation incorporated in Oklahoma. The case is now before the Court[1] on that corporation's opposed motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2] [Doc. 9] For the reasons set forth below, the Court agrees that diversity is lacking.

Background
The facts relevant to a resolution of the pending motion are not in dispute, it is the legal significance of those facts that the parties contest.[3]
This case has its origins in the tragic death of Lynette Flynn, the mother of the two minor plaintiffs, in a motel owned and operated by Teak Associated Investments # 2, Inc. ("Defendant") in October 1997. The motel was located in St. Louis County, Missouri, and was then Defendant's only remaining asset. (Smith Dep. at 10, 55.) The motel was sold by Defendant in February 1999. (Id. at 10.) On November 12, this action was filed.
On November 12, Defendant was still incorporated in Oklahoma, but no longer owed any money or paid any bills. (Id. at 25, 36.) It had an account in an Oklahoma bank with less than a hundred dollars in it, and the corporate office was in Oklahoma. (Id. at 26-27.) It did not have its own listed telephone number, however, and there was no sign on the door or anywhere in the building indicating that its corporate office was at that particular address. (Id. at 27-28.) Defendant paid no rent. (Id. at 27.) The only business activity that Defendant engaged in in Oklahoma was the payment of bills for expenses incurred in connection with the operation of the Missouri motel. (Id. at 39-53; Pl.'s Ex. 2.) The last check in payment of those bills was written in May 1999. (Id.)

Discussion
Defendant must be a citizen of a state other than Missouri for this Court to have diversity jurisdiction. For purposes of diversity jurisdiction, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1). "Courts look to the facts as of the date an action is filed to determine whether or not diversity of citizenship exists between the parties," Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir.1992), and the burden is on the party invoking diversity jurisdiction to demonstrate by a preponderance of the evidence that the parties are citizens of different states, id.
The establishment of the citizenship of an inactive[4] corporation presents a question *1083 infrequently raised,[5] and not yet decided by the Eighth Circuit Court of Appeals. The courts that have addressed the question have generally followed one of three approaches  the "last transacted business" test of the Second Circuit Court of Appeals, the "bright line" test of the Third Circuit Court of Appeals, or the "last transacted business on a case-by-case" test of the Fifth Circuit Court of Appeals.[6]
Second Circuit Approach. The Second Circuit Court of Appeals first delineated its approach to the determination of the citizenship of an inactive corporation in Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131 (2d Cir.1991). At the time of the filing of the underlying suit, Passalacqua was an inactive corporation that was incorporated in Ohio and had last transacted business in Florida. If Passalacqua was considered under § 1332(c) to be a citizen of Florida, there was no diversity and a fraud claim would have to be dismissed. The Court concluded that it was proper to consider the place where Passalacqua last transacted business because "[t]o allow inactive corporations to avoid inquiry into where they were last active would give them a benefit Congress never planned for them, since under such a rule a defunct corporation, no matter how local in character, could remove a case to federal court based on its state of incorporation." Id. at 141. See also Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 101 F.3d 900, 907 (2d Cir.1996) (an inactive corporation's principal place of business is the state in which it last transacted business).
In Circle Indus. USA, Inc. v. Parke Constr. Group, Inc., 183 F.3d 105 (2d Cir. 1999), the Second Circuit was confronted with the question of whether an inactive corporation's principal place of business was in Georgia or New York. In Georgia, the corporation had performed its last construction work two years before the suit was filed, had last operated an office, and had retained a lawyer to collect its accounts receivable in the state. On the other hand, the corporation's sole officer and director lived in New York and it was in New York that the underlying lawsuit had been filed. The Court concluded that the New York activities did not alter the corporation's citizenship because those activities were not business transactions. Id. at 108.
The majority of the district courts addressing the issue of an inactive corporation's citizenship have agreed with the Second Circuit approach. Levy, supra note 4, at 665. Several of those district courts have also addressed what constitutes a business transaction for an inactive corporation.
In Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 18 F.Supp.2d 297, 303 (S.D.N.Y.1998), the court decided that activities engaged in by an inactive corporation such as collecting $4 million in outstanding receivables, reconciling accounts, and reconciling and paying sales commissions were not business transactions as the purpose of those activities was not to man *1084 ufacture and sell woman's clothing  the inactive corporation's purpose  but was a winding down of affairs. The court additionally noted that the corporation had not attempted to negotiate or enter into any contracts or to "engage in any other activity which would amount to a business transaction." Id. Similarly, the United States District Court for the Northern District of California held that winding down activities consisting of negotiations of an insurance settlement for a corporation whose business ceased when its assets were destroyed in a fire did not rise to the level of a business transaction that would shift an inactive corporation's principal place of business from the state where those assets had been used to the state from which the negotiations were conducted. China Basin Properties, Ltd. v. Allendale Mut. Ins. Co., 818 F.Supp. 1301, 1305 (N.D.Ca.1992). But cf. Comtec, Inc. v. National Tech. Schools, 711 F.Supp. 522, 524 n. 3 (D.Ariz.1989) ("When a corporation is winding down, there is an argument to be made that its principal place of business is the state from which the corporation is making its final decisions."). Thus, "[t]he Second Circuit approach does not attempt to find a principal place of business based on the current activities of the corporation, but rather on factors present when the corporation was active." Levy, supra note 4, at 687.
Plaintiff argues that under the Second Circuit's approach the Defendant's last principal place of business was Oklahoma because it was in that state that the final decisions were made. This argument was endorsed in Comtec, supra. The Court finds, however, that the argument is inconsistent with § 1332(c)'s legislative history and with Congress' intent.
Section 1332(c) was amended in 1958 to provide that corporate diversity is based on both the place of incorporation and the principal place of business. This amendment was to prevent diversity jurisdiction from being invoked in localities in which corporations had established local ties. China Basin Properties, Ltd. v. One Pass, Inc., 812 F.Supp. 1038, 1040 (N.D.Ca. 1993). As the Senate Report accompanying the amendment noted:
The fiction of stamping a corporation a citizen of the State of its incorporation has given rise to an evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another state.... It appears neither fair nor proper for such a corporation to avoid trial in the State where it has its principal place of business by resorting to a legal device not available to the individual citizen.
Id. at 1040 n. 1 (quoting S.Rep. No. 1830, 85th Cong.2d Sess.) (alteration in original). "Congress' intent in adding the principal place of business requirement was to preclude federal courts sitting in diversity from hearing actions between corporations that are local in nature." Levy, supra note 4, at 687 Moreover, "[w]hile the corporation was active it received the benefits of conducting business in the state. Therefore, the corporation should not be able to escape scrutiny for acts which took place while it was active in the state." Id. at 688.
In the instant case, Defendant's business was owning and operating a motel in Missouri. After that business ceased, the only activities conducted in Oklahoma were the payment of expenses incurred in the operation of that motel. These bills were paid over approximately a three month period from an Oklahoma account. Defendant had an Oklahoma address, but no telephone number and no sign on the door or the building at that address. To construe Defendant's limited activities in Oklahoma as conducting business in that state would be to subvert the intent of Congress. Thus, the Court finds the Second Circuit's approach to most clearly mirror Congress' intent in amending *1085 § 1332(c). Under the Second Circuit approach, Defendant is a Missouri citizen.
Third Circuit Approach. The Third Circuit Court of Appeals has concluded that an inactive corporation has no principal place of business and is, accordingly, only a citizen of its state of incorporation. See Midlantic Nat'l Bank v. Hansen, 48 F.3d 693, 696 (3rd Cir.1995). The Court disagreed with those courts that have required that an inactive corporation's last principal place of business be considered when determining that corporations' citizenship, holding instead that:
We do not find persuasive the argument that Congress' use in section 1332(c) of the conjunction "and" signifies that Congress intended that the courts strain to locate a principal place of business when no such place in reality exists. We reject the notion that implicit in the statute's terms is the requirement that all corporations be deemed to have a principal place of business.... [F]ar more indicative of congressional intent[] is the fact that in Section 1332 Congress provided that a corporation is to be deemed a citizen of the state in which it has its principal place of business. Congress could easily have provided that a corporation shall be deemed a citizen of the state in which it `has or has had' its principal place of business. Clearly, however, Congress has provided no such thing.
Id. at 698.
This Court respectfully disagrees. Perhaps Congress could have resolved the question of an inactive corporation's principal place of business by adding "has or has had," however, corporate failures were not as commonplace in 1958 as they are today.[7]See Yuncker, supra note 5 at App. A. On the other hand, Congress did use the conjunction "and" when amending § 1332(c) to provide that a corporation was a citizen of the state of its incorporation and of its principal place of business. To find significant the omission of the words "has had" while disregarding the presence of the conjunction "and" is to disregard congressional intent. "By using the conjunction `and,' Congress intended for all of the requirements of the statute to be fulfilled." Comtec, Inc., 711 F.Supp. at 524. Under the Third Circuit's approach, an active corporation, "no matter how local in character, could remove a case to federal court based on its state of incorporation. The clear intent of Congress in enacting the 1958 amendment was to prohibit such maneuvers." Id. at 525 (interim citations omitted). See also Caribbean Mushroom Co., 980 F.Supp. at 625 (Congress' intent in including principal place of business in diversity statute was to give effect to reality that a corporation that conducted business in a state was as much of a local in that state as in the state where it filed its papers, and inactive incorporation was still closely associated, for purpose of local bias, with the jurisdiction in which it conducted business).
Accordingly, although Defendant would be a citizen of Oklahoma under the Third Circuit approach, the Court declines to adopt that approach.
Fifth Circuit Approach. The Fifth Circuit Court of Appeals has held that an inactive corporation's last place of business is relevant to, although not dispositive of, the question of the corporation's citizenship.[8]Harris v. Black Clawson Co., 961 F.2d 547 (5th Cir.1992). The Court also looked to the amount of time that the corporation had been inactive. Id. at 550. *1086 "[W]here a corporation has been inactive in a state for a substantial period of time, in this case five years, that state is not the corporation's principal place of business..." Id.
In the instant case, Defendant had been inactive for less than nine months when this lawsuit was filed. The Court finds this period not to be sufficient enough to be a factor in the determination of Defendant's principal place of business. Thus, even under the Fifth Circuit's approach, Defendant would be a citizen of Missouri.

Conclusion
Defendant was in the business of operating a motel. The last place it conducted that business was in Missouri; thus, there is no diversity between Plaintiffs and Defendant and this Court lacks subject matter jurisdiction over their dispute. Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED. [Doc. 9]
An Order of Dismissal shall accompany this Memorandum and Order.

ORDER OF DISMISSAL
In accordance with the Memorandum and Order entered this date and incorporated herein,
IT IS HEREBY ORDERED that this case is DISMISSED WITHOUT PREJUDICE.
NOTES
[1] The parties have consented to the undersigned United States Magistrate Judge entering a final disposition in this case. See 28 U.S.C. § 636(c).
[2] Defendant characterized its motion as one seeking a remand. As this case was originally filed in federal court and not removed from a state court, the motion was construed as a motion to dismiss.
[3] The Court may look to matters outside the pleadings in resolving a Rule 12(b)(1) motion. See Deuser v. Vecera, 139 F.3d 1190, 1191 n. 3 (8th Cir.1998); Drevlow v. Lutheran Church, Mo. Synod, 991 F.2d 468, 470 (8th Cir.1993).
[4] The majority of the relevant cases use the terms defunct corporations and inactive corporations interchangeably. "Generally, the terms refer to a corporation which had been conducting business activities in a state, but subsequently ceased all active business conduct in that state. A small minority of the cases do[] distinguish the two terms by using the word defunct to refer to the type of corporation described above, while reserving the term inactive for a corporation which has been granted a charter in a state but has not yet commenced business." Dawn Levy, Where Do Dead Corporations Live?, 62 Brook. L.Rev. 663, 692 n. 7 (1996). See also Caribbean Mushroom Co. v. Government Dev. Bank, 980 F.Supp. 620, 622 n. 3 (D.P.R. 1997) (holding to same effect). For ease of reference, the Court will use only the term inactive.
[5] The question is destined to be raised more frequently as the number of corporations which fail increases each year, for instance, the number increased by 465% between 1970 and 1990. Timothy Yuncker, Inactive Corporations and Diversity Jurisdiction Under 28 U.S.C. § 1332(c), 28 U.Tol.L.Rev. 815 822 (1997).
[6] Plaintiffs refer sometimes in their memorandum to the "nerve center" and "total activities" tests. These tests are relevant to establishing an active corporation's principal place of business when the corporation engages in business in more than one state. See, e.g., Federal Beef Processors, Inc. v. CBS, Inc., 851 F.Supp. 1430, 1432-33 (D.S.D.1994); Associated Petroleum Producers, Inc. v. Treco 3 Rivers Energy Corp., 692 F.Supp. 1070, 1073-74 (E.D.Mo.1988). These references are inconsequential, however, because Plaintiffs analyze the instant cases under the three relevant approaches.
[7] In 1956, of the 20,524 diversity cases filed, 12, 732  62%  involved corporations. Yuncker, supra note 5, at 840 n. 26. In 1980, 11,742 corporations failed. Id. at 822. Clearly, Congress was concerned in 1958 with the number of diversity suits involving corporations and not with the dilemma of how to determine the citizenship of those failed corporations.
[8] The Fourth Circuit Court of Appeals has adopted the Fifth Circuit's approach. See Athena Automotive, Inc. v. DiGregorio, 166 F.3d 288 (4th Cir.1999).