**AL SOLUTIONS, INC., Plaintiff,**

v.

**JAMEGY, INC. a/k/a Titan Holdings, Inc. and Jamegy WV, Inc. a/k/a Titan Holdings WV, Inc., Defendants.**

**No. 08 Civ. 5515(CM).**

United States District Court,
S.D. New York.

Sept. 15, 2008.

---

**37.** Alvarez Aff. Ex. B, at 33–34.

**38.** *On Davis,* 246 F.3d at 164–68.

John P. Boyle, Skadden, Arps, Slate, Meagher & Flom LLP (NYC), New York, NY, for Al Solutions, Inc.

Hans Harris Chen, Robert R. Vieth, Joseph J. Samarias, Cooley Godward Kronish, LLP, Reston, VA, Maxine Gail Sleeper, Cooley Godward Kronish LLP, New York, NY, for defendants.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND TO THE NEW YORK SUPREME COURT

McMAHON, District Judge.

Plaintiff commenced this breach of contract action in New York State Supreme Court on May 20, 2008 and defendants removed it to this Court pursuant to 28 U.S.C. § 1332 on grounds of federal diversity jurisdiction. Plaintiff now moves this Court to remand the action to State Court alleging that complete diversity of citizenship is lacking. For the reasons set forth below, the motion is granted.

**Background**

A. *Summary of the Action*

In December 2006, pursuant to an Asset Purchase Agreement ("APA"), plaintiff AL Solutions, Inc. purchased "substantially all of the assets" of defendants Jamegy, Inc. and Jamegy WV, Inc., producers of titanium alloying products used in the aluminum industry.[1] (Megy Decl. ¶ 4–5.) The acqui-

---

1. In January 2007 Jamegy, Inc. changed its name to Titan Holdings, Inc. and Jamegy WV,

sition included defendants' two former manufacturing facilities located in West Virginia. (*Id.*) Plaintiff paid over $65 million for these assets. (Def. Mem. at 2.) In its complaint, plaintiff alleges that after the closing of the sale, it learned that defendants breached various material representations and warranties they made in the APA. (*See id.*)

On May 20, 2008, plaintiff commenced this action in New York Supreme Court seeking to recover damages of over $10 million for defendants' alleged breaches of the APA. (*Id.*) On June 18, 2008, defendants removed the action to this Court by invoking diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal ¶ 5.) On July 8, 2008, plaintiff filed this motion to remand to State Court asserting that complete diversity is lacking.

It is undisputed that plaintiff is a Delaware corporation with its principal place of business in West Virginia and that the defendants are incorporated in Oregon. (*Id.* ¶¶ 3–4.) It is also undisputed that before the execution of the APA in 2006, defendants' principal place of business was West Virginia. (Boyle Decl., Exs. A, B.) Defendants, however, contend that their principal place of business is now Oregon, as it was when this action commenced. (Notice of Removal ¶ 4.) Plaintiff, on the other hand, contends that defendants are inactive corporations and that under applicable law, their principal place of business is the state where they last transacted business—West Virginia. (Def. Mem. at 4.) I agree. Since plaintiff is also a citizen of West Virginia, complete diversity is lacking and I am remanding the case.

B. *Facts Relating to Defendants' Principal Place of Business*

The following facts are assumed to be true for purposes of this motion;

In February 2007, following the December 2006 sale of their assets to plaintiff, defendants relocated their offices from West Virginia to Oregon. (Megy Decl. ¶ 8.) The defendants moved again in October 2007 to a new office in Oregon, located in the home of Devin Megy, the defendant companies' sole employee and executive officer. (*Id.* ¶¶ 8, 12.) Devin Megy also serves on the defendants' board of directors along with its only other member, Joseph Megy. (*Id.* ¶ 12.) Decisions requiring consultation with Joseph Megy either take place in Devin Megy's Oregon home office or by telephone between the Oregon office and Joseph Megy's home in Richland, Washington. (*Id.*) Since the 2006 asset sale, defendants paid Devin Megy more than $100,000 for his services. (*Id.*)

Defendants have various post-closing obligations under the APA, all of which are managed by Devin Megy from their Oregon office. (*Id.* ¶ 21.) First, defendants agreed "to not dissolve, liquidate or otherwise wind up [their] affairs" (*Id.* ¶ 16 (*quoting* APA § 5.4).) Hence, although defendant Jamegy, Inc. considered the possibility of liquidation in late 2006 following the execution of the APA, it did not liquidate because doing so would violate the APA. (*Id.* ¶ 13.) Defendants are also required to discharge all of their liabilities, including liabilities related to fires at their former manufacturing facility, environmental liabilities, and liabilities related to benefit and bonus payments to former employees. (*Id.* ¶ 16 (*citing* APA §§ 1.3, 5.6).) In addition, defendants are obligated to maintain an insurance policy. (*Id.* ¶ 17 (*citing* APA § 5.4).)

In connection with a July 2006 fire at their former facility, defendants are currently in the process of defending themselves in a lawsuit filed November 8, 2006 by a deceased employee's family. (*Id.*

Inc. changed its name to Titan Holdings WV,    Inc. (Notice of Removal ¶ 4.)

¶ 16.) Defendants are also obligated under the APA to pay for building and equipment repairs and any other mutually agreed upon changes resulting from a December 2006 fire at the facility. (*Id.* ¶ 20 (*citing* APA §§ 4.1(c), 5.8).) One of those mutually agreed upon changes was an Agreement Regarding Changes in Equipment, entered into September 12, 2007, pursuant to which defendants paid plaintiffs $184,000. (*Id.* ¶ 20.)

Another APA provision requires defendants to contract with an Environmental Service Provider, at their own cost, to monitor groundwater and surface water at their former West Virginia facility and to perform other necessary monitoring activities. (*Id.* ¶ 19 (*citing* APA § 5.7).) Defendants hired an Environmental Service Provider who performs this work and is scheduled to do so until "at least January 2009." (*Id.* ¶ 19.)

In order to satisfy their APA obligations, such as paying their liabilities and resolving indemnification claims, defendants are required to maintain "one or more accounts at one or more qualified financial institutions ... with [$5,000,000] ... in available cash." (*Id.* ¶ 18 (*quoting* APA § 5.4).) In accordance with this provision, defendants maintain more than $5,600,000 in interest-bearing accounts in a Pennsylvania bank. (*Id.* ¶ 14.) Defendants use these funds to satisfy their administrative and legal expenses and to finance their obligations under the APA. (*Id.* ¶ 14.)

Aside from performing their APA obligations, the only other business defendants have engaged in since their relocation to Oregon is that they "have *considered* new opportunities for growth consistent with their non-competition obligations under the APA." (*Id.* ¶ 21 (emphasis added).) In that regard, they "have *contemplated* providing consulting services to metal companies ... using a process technology developed by Joseph Megy." (*Id.* (emphasis added).) However, "[a]s of this date, [defendants] have not pursued a consulting business based on this technology" though they "will continue to consider this and other opportunities." (*Id.*)

Although defendants relocated their office to Oregon in February 2007, the January 7, 2008 "Business Entity Data" on the Oregon Secretary of State's website lists the "Principal Place of Business" for both defendants as "100 South Chester St, New Cumberland, WV 26047." (See Boyle Decl., Exs. A, B.) Defendants allege that this data is based on information submitted January 18, 2007. (Megy Decl. ¶ 24.) The July 2, 2008 "Business Entity Data" lists the same West Virginia address for defendants' "Principal Place of Business," while the "Mailing Address" was changed from a West Virginia address to an Oregon address. (See Boyle Decl., Exs. C, D.) Defendants allege that this data is based on information submitted January 17, 2008 that was prepared by Devin Megy without consulting a lawyer. (Megy Decl. ¶ 24.) According to defendants, Devin Megy updated their mailing address to reflect the new Oregon address but "neglected" to update the principal place of business. (Id.) Defendants assert that the West Virginia address listed as the principal place of business in these four filings is the address of their former manufacturing facility, which was acquired by plaintiff in the asset sale. (*Id.* ¶¶ 5, 23.) Devin Megy apparently corrected the defendants' principal place of business to reflect an Oregon address on June 30, 2008, after this action commenced. (*Id.* ¶ 25.)

The "Business Entity Data" on the West Virginia Secretary of State's website, as of July 2, 2008 and July 7, 2008, lists defendants' "Principal Office Address" as an Oregon address. (*See* Boyle Decl., Exs. E, F.) Defendants maintain this information

on the West Virginia Secretary of State's website based on the advice of their accountant related to certain tax obligations they incur in West Virginia as a result of the December 2006 asset sale. (Megy Decl. 126.)

## Discussion

■■ An action that was originally filed in state court may be removed by a defendant to federal court only if the "district courts of the United States have original jurisdiction" over the action. *Shapiro v. Logistec USA Inc.*, 412 F.3d 307, 309–10 (2d Cir.2005) (*quoting* 28 U.S.C. § 1441(a)). However, once a case has been removed, it must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Id.* at 310 (*quoting* 28 U.S.C. § 1447(c)). Where, as here, jurisdiction is asserted by a defendant in a removal petition, the defendant bears the burden of establishing that removal is proper. *See Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir.2004) (citations omitted). If there are any doubts as to removability, they are resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of the states." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir.2007) (citation omitted).

■■ The Jamegy defendants based removal on diversity jurisdiction under 28 U.S.C. § 1332. It is well settled that to invoke diversity jurisdiction under 28 U.S.C. § 1332, there must be complete diversity of citizenship. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005). In other words, the court lacks diversity jurisdiction if any plaintiff is a citizen of the same state as any defendant. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir.2005). For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of any state in which it is incorporated and the state where it has its principal place of business. *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir.2002) (citing 28 U.S.C. § 1332(c)(1)). Therefore, if either defendant in this case has its principal place of business in West Virginia, it is a citizen of West Virginia like plaintiff, and complete diversity is lacking.

■■ To determine whether diversity jurisdiction exists, courts look to the citizenship of the parties at the time the action commenced. *See, e.g., id.* When a corporation is inactive at the time the suit was filed, its principal place of business is considered to be the state where the corporation last transacted business. *Circle Indus. USA. Inc. v. Parke Const. Group, Inc.*, 183 F.3d 105, 108 (2d Cir.1991) (*citing Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 907 (2d Cir. 1996)). Plaintiff contends that the defendants were inactive corporations when this action commenced in May 2008 and defendants failed to put forth evidence sufficient to rebut this contention.

For a corporation to be active, it must engage in business transactions that go towards the furtherance of its business purpose. *See Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 18 F.Supp.2d 297, 303 n. 6 (S.D.N.Y.1998) (*citing Pinnacle Consultants*, 101 F.3d at 907 n. 5). All of the activities asserted by defendants as evidence that they are active corporations relate to their obligations under the APA in connection with their previously held assets. Defendants have not engaged in a single transaction unrelated to their APA obligations and in furtherance of their business purpose. Nor have defendants generated any income since the asset sale. *See Interpetrol Bermuda, Ltd. v. Rosenwasser*, No. 86 Civ. 5631(JFK), 1987 WL

7734, at * 1 (S.D.N.Y. Mar.3, 1987). Therefore, I find that both defendants were inactive corporations at the time this action commenced.

Defendants were incorporated for the purpose of producing titanium alloying products. They sold all of the assets associated with this business purpose to plaintiff in December 2006. Defendants' only activities since December 2006 include defending themselves in a lawsuit arising out of a fire at their former West Virginia manufacturing facility, paying for building and equipment repairs arising out of another fire at the facility, contracting with an Environmental Service Provider to provide monitoring services at the facility, discharging liabilities related to payments to former employees, maintaining an insurance policy, and maintaining bank accounts with over $5 million to fund these activities. These activities do not go towards the purpose of producing titanium alloying products. *See Bonnie,* 18 F.Supp.2d at 302–03 (finding that plaintiff, incorporated for the purpose of manufacturing and selling women's clothing, was not active in New Jersey after it closed its New York office and ceased operations because collecting account receivables and paying sales commissions did not go towards the purpose of manufacturing and selling women's clothing).

While defendants are correct in stating that "a company can change the business purposes to which its transactions are intended to further" yet still remain active (Def. Mem. at 14), this point is of no help to them. Defendants have not shown that they have a new business purpose. Defendants merely assert that they have "considered" and "contemplated" providing consulting services, though they have not actually pursued this idea. *See Peters v. Timespan Commc'ns, Inc.,* No. 97 Civ.

8750(DC), 1999 WL 135231, at **2, 5 (S.D.N.Y. Mar.12, 1999) (finding that corporation was active because although it no longer engaged in the business of producing films, it continued to engage in the business of owning a valuable investment and negotiated contracts for the sale of its assets). Defendants' reliance on *Raine v. Entertainment Acquisition Co.* is therefore misplaced, because in that case the corporation relocated to New Jersey, where it negotiated and executed agreements to further its new business purpose, *Id.,* No. 95 Civ. 3193(DLC), 1996 WL 428394, at *2 (S.D.N.Y. July 31, 1996). These agreements, along with the fact that the corporation held annual stock meetings, had offices and operations, maintained bank accounts, and filed corporate state tax returns exclusively in New Jersey, made the corporation active in New Jersey. *See id.,* at *4. Defendants, however, have not presented evidence that they executed agreements towards a new business purpose, hold stock meetings, maintain bank accounts, or file corporate state tax returns exclusively[2] in Oregon, in order show that they are active in Oregon.

Although defendants' sole employee and officer presently lives in Oregon, receives the corporation's mail there, and maintains defendants' obligations under the APA from there, "these contacts do not alter its citizenship because the corporation is not transacting business through these activities." *Circle Indus.,* 183 F.3d at 108. Defendants paid Megy for his services in maintaining defendants' obligations under the APA, but they "did not attempt to negotiate or enter into any contracts or engage in any other activity which would amount to a business transaction." *Bonnie,* 18 F.Supp.2d at 303 (finding corporation inactive because although it paid em-

---

**2.** In fact, defendants admit that they maintain business data on the West Virginia Secretary of State's website because of tax obligations they incur in West Virginia, (Megy Decl. ¶ 26.)

ployees, it did not attempt to enter any new contracts). Furthermore, "basing corporate citizenship solely on the residence of a single corporate officer," as defendants attempt to do, "would conflate and disregard corporate form." *Helmsley–Spear, Inc. v. Ramfis Realty Inc.*, No. 03 Civ.8482 NRB, 2003 WL 22801162, at *2 (S.D.N.Y. Nov.25, 2003).

For all of the above reasons, I find that when this action commenced in May 2008, defendants were both inactive corporations. Therefore, I must look to the state in which they last transacted business to determine their principal place of business.

Defendants' last transaction involved the sale of substantially all of their assets to plaintiff under the APA (and the only asset they appear to retain is their $5.6 million bank account, which they are required to have under the APA in order to pay their liabilities and fund their other APA obligations). Since this transaction occurred while defendants were located in West Virginia and involved assets located in West Virginia, defendants' principal place of business is West Virginia.

Furthermore, at the time this action commenced, the Oregon Secretary of State's website listed defendants' principal place of business as West Virginia. Though the West Virginia Secretary of State's website contains conflicting information, listing defendants' principal office address as Oregon, this doubt as to whether the principal place of business is West Virginia must be resolved against defendants and against removability. *See In re MTBE Prods. Liab. Litig.*, 488 F.3d at 124. Therefore, I conclude that both defendants and plaintiff are citizens of West Virginia and complete diversity is lacking. Defendants have failed to meet their burden of proving that this Court has original jurisdiction over this case.

**Conclusion**

The plaintiff's motion to remand is GRANTED.