GRAND UNION SUPERMARKETS OF
THE VIRGIN ISLANDS, INC., and Red
Apple Group, Inc., Plaintiffs,

v.

H.E. LOCKHART MANAGEMENT,
INC., Defendant.

No. 2001–44.

District Court, Virgin Islands,
Appellate Division,
D. St. Thomas and St. John.

Nov. 19, 2001.

Karin A. Bentz, St. Thomas, VI, Ira N. Glauber, New York City, for plaintiffs.

Simone R.D. Francis, St. Thomas, VI, for defendant.

## MEMORANDUM

MOORE, District Judge.

Before the Court is the defendant's motion to dismiss the complaint filed in the above-captioned action on the grounds that this Court lacks subject matter jurisdiction. For the reasons set forth below, the Court will grant the defendant's motion.

## I. BACKGROUND

Grand Union Supermarkets of the Virgin Islands, Inc. ["Grand Union"] is a Delaware corporation authorized to do business in the Virgin Islands since 1986. Plaintiff Red Apple Group ["Red Apple"], a New York corporation, is Grand Union's corporate parent. In 1995, Grand Union operated two grocery stores in the Virgin Islands, one in St. Thomas, on premises owned by and leased from the defendant, H.E. Lockhart Management, Inc. ["HELM"],[1] and the other in St. Croix. On September 15, 1995, Hurricane Marilyn struck the Virgin Islands, completely destroying Grand Union's St. Thomas store. Under the terms of the lease, Grand Union was required to maintain standard fire and property insurance on the premises.

---

1. As noted in an earlier opinion in a related case, the lease was executed in 1968 between Grand Union's predecessor in interest, the Grand Union Company, and the defendant's predecessor in interest, the H.E. Lockhart Development Corporation. The lease was assigned by Grand Union Company to Grand Union Supermarkets of the Virgin Islands, Inc. on September 14, 1986. *See H.E. Lockhart, Inc. v. National Union Fire Ins.*, 39 V.I. 447, 448 n. 2, 183 F.R.D. 455 (D.Virgin Islands 1998).

Grand Union did not carry insurance as required by the lease, although it was self-insured through Red Apple, its parent company.

The destruction of the building and ensuing efforts on the part of HELM to ensure that Grand Union would promptly rebuild it as required by the lease precipitated a complete breakdown of relations between Grand Union and HELM. As a result, HELM notified Grand Union that it was terminating the lease due to Grand Union's failure to carry standard fire and property insurance as required under the terms of the lease or to promptly rebuild the premises. This in turn precipitated Grand Union's lawsuit filed on January 23, 1996, in Territorial Court seeking, *inter alia*, declaratory judgment to continue the lease. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Management, Inc.*, Civ. No. 50/1996 (filed Jan. 23, 1996).

In February 1996, Red Apple/Grand Union was busy arranging for National Union Fire Insurance Co. ["National Union"] to issue an endorsement on a preexisting policy that extended coverage to the St. Thomas building retroactively for the period between October 1, 1994 and October 1, 1995 in the amount of $2 million, with $250,000 deductible. Red Apple/Grand Union paid a premium of $10,000 for the retroactive coverage. Red Apple/Grand Union further agreed not to make any claims against National Union arising out of losses from Hurricane Marilyn and to indemnify National Union for any bona fide claims made on the retroactive coverage. National Union issued a Certificate of Insurance to HELM naming HELM as the "Certificate Holder" and indicating that insurance in the amount of $2 million had been provided for the building covering the period from October 1, 1994 through October 1995.

Then, when HELM counterclaimed in the Territorial Court case that Grand Union had breached the terms of the lease by failing to carry the required insurance coverage, Grand Union was able to submit the retroactive endorsement as proof that Grand Union had maintained the insurance policy as required by the lease. It seems, however, that Grand Union did not reveal to HELM or to the Territorial Court that, under the terms of the retroactive insurance policy, Grand Union would make no claims against the policy. Grand Union also did not mention that Red Apple/Grand Union had agreed to indemnify and hold harmless National Union for any claims arising out of the destruction that the newly insured building had already suffered from Hurricane Marilyn.

Armed with the Certificate of Insurance and frustrated by Grand Union's continued failure to rebuild, HELM submitted a claim in February 1997 against National Union's retroactive policy for the destruction of the building. When National Union denied payment on the claim, HELM invoked the diversity jurisdiction of this Court to sue National Union and Red Apple. *See H.E. Lockhart Mgmt., Inc. v. National Union Fire Ins.*, 39 V.I. 447, 183 F.R.D. 455 (D.Virgin Islands 1998). In that earlier case, HELM sought declaratory relief for National Union's alleged breach of the contract of insurance and for its alleged bad faith and fraud in denying the claim submitted. Against Red Apple, HELM asserted claims for breach of contract and bad faith and fraud for refusing to release funds from its self-insurance recovery fund for the reconstruction of the grocery store. Grand Union, being a citizen of this jurisdiction, was not named as a defendant in that earlier diversity action.

Red Apple and National Union, represented by the same attorney pursuant to a joint defense agreement, moved to dismiss

the action, asserting that HELM failed to name an indispensable party, *i.e.*, Grand Union Supermarkets of the Virgin Islands, Inc., whose presence in the case would destroy diversity. The representations by counsel that Grand Union's principal, indeed, its only, place of business was in the Virgin Islands were not disputed, and on November 23, 1998, I found that Grand Union was an indispensable party whose presence in the litigation would destroy diversity. *See H.E. Lockhart*, 39 V.I. at 453, 183 F.R.D. 455. I dismissed the case, and HELM filed a nearly identical action in the Territorial Court shortly thereafter, adding Grand Union as a party. *See H.E. Lockhart Mgmt., Inc. v. National Union Fire Ins. Co.*, Civ. No. 909/1998 (Terr. Ct. filed Dec. 22, 1998).

Not long after I dismissed HELM's 1997 action for lack of jurisdiction, National Union notified Red Apple and Grand Union by letter that it was disassociating itself from the position Red Apple/Grand Union had taken opposing HELM's claims against National Union under the retroactive endorsement. National Union also declared that it thereafter would not only deal directly with HELM regarding its claim against the policy proceeds but that it also would "take steps to satisfy" such claims. (*See* Def.'s Mem. Supp. Mot. Dismiss Ex. 4–D.) Following through with these intentions, National Union concluded negotiations with HELM on March 1, 1999, to settle HELM's claims in its 1998 Territorial Court action for $2.1 million plus $690,000 in interest, to be paid on behalf of HELM into an interest-bearing escrow account to be used only for reconstruction of the building, where it remains to date. (*See id.* Ex. 5 ("Trust/Escrow Agreement"); Verified Complaint ¶ 31.)

On March 4, 1999, Red Apple/Grand Union and HELM executed a mediated settlement agreement for Grand Union to pay HELM $35,000 and give up the approximately five years remaining on the lease. Further, "the parties agree[d] to dismiss all pending · claims, including *Lockhart v. National Union* ([Terr. Ct.] Civ. [No.] 909/98), and to exchange full and comprehensive releases in favor of and by all parties, including Grand Union, Red Apple Group, Inc., National Union Fire Insurance Co. of Pittsburgh and H.E. Lockhart." (*See* Def.'s Mem. Supp. Mot. Dismiss Ex. 4A ("Mediated Settlement Agreement").) Red Apple and Grand Union participated with HELM in these mediation proceedings pursuant to a mediation referral order entered by the Territorial Court. Although National Union was a party to the suit and aware of the court-ordered mediation session, it chose not to attend. Despite Red Apple/Grand Union's knowledge that National Union no longer considered itself represented by the same attorney or as having the same interests as Red Apple/Grand Union and despite National Union's absence from the mediation proceedings, Red Apple/Grand Union nevertheless executed the mediated settlement without assurance that it would bind National Union. Without National Union's participation in the March 4th agreement, Red Apple and Grand Union accordingly were not released from their agreement to indemnify National Union for the claims it had paid to HELM. Apparently, Grand Union did not receive notice until the next day's mail that National Union had already agreed to settle HELM's claims for some $2.7 million.

The next month, National Union sued Red Apple, Grand Union, and John A. Catsimatidis, president of Red Apple Group, in New York state court to recover the $2.7 million in insurance proceeds and interest paid on behalf of HELM into the escrow account. *See National Union Fire Ins. Co. v. Red Apple Group, Inc.*, No.

601073/99 (N.Y. Sup.Ct., filed Apr. 27, 1999). National Union's claims in that case have been narrowed to breach of the indemnification agreement. Red Apple/Grand Union's various counterclaims and affirmative defenses, including breach of contract, breach of duty of good faith, breach of fiduciary duty, fraud, and rescission, have in turn been reduced to approximately six affirmative defenses, including the defense that National Union had failed to notify its indemnitor of the impending settlement. *See id.,* slip op. at 7, 14 (entered Aug. 8, 2000).

While the New York indemnification action against National Union was still pending, Grand Union and Red Apple filed this diversity lawsuit on February 26, 2001, asserting claims against HELM similar to their counterclaims in the New York action against National Union. Specifically, they allege here that HELM perpetrated an "unjust and dastardly act" on them and a fraud on the Territorial Court when it entered into the mediated settlement agreement without informing Grand Union or Red Apple that it had already settled its claim against National Union. To avenge this alleged fraud against themselves and the Territorial Court, Red Apple and Grand Union seek compensatory and punitive damages. They also include for good measure a claim for unjust enrichment and a contract claim for breach of the duty of good faith and fair dealing.

## II. DISCUSSION

Under section 22(a) of the Revised Organic Act of 1954, this Court has general civil jurisdiction equivalent to that of a district court of the United States. *See* 48 U.S.C. § 1612(a).[2] Jurisdiction in this case

is premised on the federal diversity statute, 28 U.S.C. § 1332(a) and (c). In its motion to dismiss for lack of jurisdiction, the defendant asserts that, because HELM and Grand Union are both citizens of the Virgin Islands for diversity purposes, this Court has no jurisdiction to hear the dispute. The plaintiffs counter that at the time this suit was commenced on February 26, 2001, Grand Union was no longer an active corporation and thus, under *Midlantic National Bank v. Hansen,* 48 F.3d 693 (3d Cir.1995), it was a citizen of Delaware only. As a result, they argue, there is complete diversity of the parties, and jurisdiction is proper in this Court.

Section 1332(a)(1) of the diversity statute requires complete diversity between the parties. Jurisdiction is lacking if any plaintiff and any defendant are citizens of the same state. *See The Mennen Co. v. Atlantic Mut. Ins. Co.,* 147 F.3d 287, 290 (3d Cir.1998). For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). To determine whether diversity exists between the parties in this case, I must examine their respective citizenship at the time the complaint was filed. *See Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). In this jurisdiction, a corporation's principal place of business is determined by its actual business activities. *See Kelly v. United States Steel Corp.,* 284 F.2d 850, 854 (3d Cir.1960); *see also Hansen,* 48 F.3d at 696 ("[W]e consider the actual business activities of the corporation to be determinative of the corporation's principal place of business ....").

---

**2.** 48 U.S.C. § 1612(a). The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), *reprinted in* V.I. CODE ANN. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I. CODE ANN. tit. 1).

The question in this case, then, is whether Grand Union's actions and activities in the Virgin Islands as of February of this year rendered it an active corporation with its principal place of business in the Virgin Islands. If so, then diversity would not be complete, and this Court would have no power to hear this case.

Grand Union argues that by February 2001, it had ceased all corporate activities, making it an "inactive" corporation with no principal place of business. *See Hansen,* 48 F.3d at 696 ("[A]s a general matter, an 'inactive' corporation (that is, a corporation conducting no business activities) has no principal place of business, and is instead a citizen of its state of incorporation."). HELM does not dispute the rule in *Hansen* that a wholly inactive corporation does not have a principal place of business.[3] HELM instead observes that Grand Union now wants to deny its Virgin Islands citizenship after its corporate parent, Red Apple, represented to this Court in 1997 that Grand Union was a Virgin Islands citizen whose indispensable presence would destroy diversity jurisdiction. HELM's more persuasive argument is that Grand Union Supermarkets of the Virgin Islands, Inc., was not in fact an inactive corporation when it filed suit on February 26, 2001.

It seems well-settled in this jurisdiction that principles of estoppel do not apply in establishing or refuting citizenship for purposes of diversity jurisdiction. *See Rubin v. Buckman,* 727 F.2d 71, 72 (3d Cir.1984) ("[J]urisdiction cannot be created by estoppel, even as a sanction ....") (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) and *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)); *see also The Mennen Co.,* 147 F.3d at 293–94 n. 9. Moreover, it is surely well-established that jurisdiction must be determined on the facts in the record of this case. *See The Mennen Co.,* 147 F.3d at 294 ("[S]ubject matter jurisdiction depends upon facts of record, and when any question arises as to the existence of jurisdiction a federal court is obligated to make an independent determination of those facts."). Thus, diversity jurisdiction exists in this case only if facts in the record support a finding that, at the time it sought to avail itself of the process and authority of this Court by filing its complaint on February 26, 2001, Grand Union was indeed wholly inactive and thus without a principal place of business.

All agree that the test for determining whether a corporation is inactive is

---

**3.** As noted by the Court of Appeals in *Hansen,* other circuits have taken different views in determining the citizenship of inactive corporations. The Court of Appeals for the Second Circuit adopted the rule that an inactive corporation is a citizen of its state of incorporation and its last principal place of business. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 141 (2d Cir.1991). The Court of Appeals for the Fifth Circuit adopted the more flexible rule that an inactive corporation's last principal place of business is relevant to determining its citizenship, but not controlling. *See Harris v. Black Clawson Co.,* 961 F.2d 547, 551 (5th Cir. 1992). The Third Circuit Court of Appeals' approach has not been followed by courts in other jurisdictions. *See, e.g., Flynn v. Teak Assoc. Investments # 2,* 98 F.Supp.2d 1081, 1085 (E.D.Mo.2000) (rejecting the Third Circuit's approach in *Hansen* as a subversion of Congressional intent); *Caribbean Mushroom Co. v. Government Dev. Bank for Puerto Rico,* 980 F.Supp. 620, 625 (D.P.R.1997) (rejecting the Third Circuit's approach in *Hansen* because it does not comport with the goal of Congress in enacting section 1332(c) or with the Constitutional grant of judicial authority over diversity cases).

fact-driven and requires an examination of the corporation's day-to-day business activities to see whether it is active or inactive. *See Kelly,* 284 F.2d at 851 ("[W]hat facts are significant and determinative in this matter depends upon the standard by which a court looks at the question and evaluates the facts and decides which facts are important and which facts are relatively unimportant."). The *Hansen* case, upon which Grand Union heavily relies, sets forth a straightforward legal standard: Unless a corporation has ceased "*any and all* business activities," it is active. *See Hansen,* 48 F.3d at 696 n. 4 (emphasis added). In *Hansen,* the defendant corporation, Hansen Bancorp, Inc. ["Hansen"], was a holding company incorporated in the state of Delaware and headquartered in Pennsylvania that held the stock of two thrift institutions, one in Florida and one in New Jersey. In early 1991, Hansen moved its headquarters from Pennsylvania to New Jersey, and a year later, federal regulatory agencies seized control of all of Hansen's assets, namely, the New Jersey and Florida thrift institutions. Six months later, the Midlantic National Bank, a New Jersey citizen, sued Hansen in the New Jersey federal district court to collect on defaulted loan agreements. Hansen moved to dismiss for lack of jurisdiction, arguing that despite its inactive status, it was still a citizen of New Jersey whose

local character had not been dissipated in the six months since its assets were seized. The Court of Appeals found that the complete seizure of all its assets rendered Hansen completely inactive and held that such an inactive corporation is a citizen of its state of incorporation only. *See* 48 F.3d at 695–96. As already noted, the *Hansen* court emphasized that "[b]y 'inactive' corporation, we mean a corporation that has ceased *any and all* business activities." *Id.* at 696 n. 4 (emphasis added).

■ I first note that not one of the cases relied on by Grand Union, including *Hansen* itself, involved a *plaintiff* corporation asserting diversity of citizenship in a federal district court in a state where it has deliberately maintained its authorization to do business and bring lawsuits and is the only state in which it has conducted any and all of its business activities past or present.[4] Unlike the corporations in those cases, Grand Union has never engaged in business activities anywhere but in the Virgin Islands. Likewise, Grand Union is not a foreign corporation whose only contact with the Virgin Islands is the institution of this suit. Finally, Grand Union has neither formally terminated its operations nor even begun the process of dissolving and winding up its business. As already stated, after *Hansen,* the question of whether a given corporation is truly inac-

---

4. *See, e.g., Gavin v. Read Corp.,* 356 F.Supp. 483, 486–87 (E.D.Pa.1973) (denying the defendant corporation's motion to dismiss for lack of diversity jurisdiction, finding the corporation no longer had a principal place of business because it had ceased all business activities in the forum state, sold all of its assets, and was in the process of winding down at the time the complaint was filed); *Kreger v. Ryan Bros., Inc.,* 308 F.Supp. 727, 728 (W.D.Pa.1970) (denying the defendant corporation's motion to dismiss for lack of diversity jurisdiction, finding that the corporation had become progressively inactive in the forum state during the years before the

suit was filed and that the corporation's principal place of business had shifted to another state); *Interpetrol Bermuda, Ltd. v. Rosenwasser,* 1987 WL 7734, 1987 U.S. Dist. LEXIS 1484 (S.D.N.Y. Mar. 3, 1987) (denying the defendant's motion to dismiss for lack of diversity jurisdiction because the plaintiff corporation, an inactive corporation alleging citizenship in Bermuda, had never engaged in any significant business activities outside Bermuda; instituting litigation in the forum state, without more, does not transform the inactive corporation into an active corporation with a principal place of business).

tive turns on whether it has ceased *any and all* business activities. The term "business activities" must be construed to mean any and all ongoing activities related to the business of the corporation, including the activities of maintaining its authority to conduct business in the Virgin Islands, as well as actually filing suit in the Virgin Islands to recover damages for earlier business activities. *Cf. Co–Efficient Energy Sys. v. CSL Indus., Inc.*, 812 F.2d 556, 558 & n. 2 (9th Cir.1987) (where corporation had not formally ceased operations or begun winding up procedures, the fact that it was not engaged in "traditional business activities" did not render it inactive).

The record demonstrates clearly that Grand Union simply has not ceased *any and all* business activities in the Virgin Islands. First and foremost, Grand Union instituted this lawsuit in the Virgin Islands. Far from being a distant and potentially hostile foreign forum in which an off-island company must defend against a local litigant, the Virgin Islands is the past and present location of all of Grand Union's business activities, most of which related to the operation of large grocery stores. Second, Grand Union has not begun formal dissolution procedures or even instituted the statutory procedures to withdraw its application to do business in the Virgin Islands. *See* 13 V.I.C. § 407. Indeed, as recently as May 2001, Grand Union obtained a Certificate of Good Standing from the Office of the Lieutenant Governor upon the payment of its franchise taxes last due and filing of the requisite corporate reports. (*See* Pl.'s Opp'n Mot. Dismiss Ex. H (Certificate of Good Standing, issued May 17, 2001).) The record further discloses that Grand Union took affirmative steps to retain its authorization to do business in the Virgin Islands as required by 13 V.I.C. §§ 401 and 533.

(*See id.* Ex. I (Affidavit of Suzanne Grigg).)

By its own submissions, Grand Union is alive and well in the Virgin Islands, actively paying franchise taxes, preparing and filing its corporate reports, bringing this suit to avenge and set right alleged "dastardly" acts of fraud perpetrated on it and the Territorial Court by its former landlord, and generally continuing to take the steps necessary to remain in good standing to do business in this Territory. (*See id.* Ex. H.) Although it is true that Grand Union's business activities in the Virgin Islands have decreased dramatically since 1995, they are more than merely the last "flickers" of a waning corporate presence. *Cf. Kreger v. Ryan Bros.*, 308 F.Supp. at 729 (finding diversity jurisdiction where "only a flicker of corporate activity remains"). Rather, these activities affirmatively evidence its continued presence in the Territory, a presence that belies Grand Union's self-proclaimed inactivity.

■ After careful consideration of the rule in *Hansen* and its definition of an inactive corporation, I do not have to strain the least little bit to find that Grand Union was an active corporation engaged in affirmative corporate activities in the Virgin Islands as of February of 2001. Since its only place of business continues to be the Virgin Islands, it is a citizen of the Territory.

### III. CONCLUSION

Both plaintiff, Grand Union Supermarkets of the Virgin Islands, Inc., and defendant, H.E. Lockhart Management, Inc., are citizens of the Virgin Islands. A plaintiff and the defendant being citizens of the same territory, the complete diversity of citizenship required by 28 U.S.C. § 1332(a)(1) is lacking, and this Court has no subject matter jurisdiction over the case. Accordingly, the defendant's motion

to dismiss for lack of diversity jurisdiction will be granted.

## ORDER

For the reasons stated in the accompanying Memorandum of even date, it is hereby

**ORDERED** that the defendant's motion to dismiss is **GRANTED**.