## GRAND UNION SUPERMARKETS OF THE VIRGIN ISLANDS, INC.

### v.

**H.E. LOCKHART MANAGEMENT, INC. Grand Union Supermarkets of the Virgin Islands, Inc.; Red Apple Group, Inc., Appellants**

No. 02–2578.

United States Court of Appeals, Third Circuit.

Jan. 16, 2003.

Karin A. Bentz, [Argued], Charlotte Amalie, St. Thomas, USVI, for Appellants.

Gregory H. Hodges, Simone R.D. Francis, [Argued], Dudley, Topper & Feuerzeig, Charlotte Amalie, St. Thomas, USVI, for Appellee.

Before SCIRICA, ALITO and RENDELL, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

We are asked to decide whether a corporation that maintains the qualifications to do business in a state, but no longer enters into any business contracts, makes any sales or purchases, owns any assets, owns or rents any property, employs any workers, or maintains an address in the state, can be said to have its principal place of business in that state for diversity purposes. We hold that since such a corporation is not conducting any "business activity," it is not a citizen of that state. Accordingly, we will reverse the judgment of the District Court dismissing the case for lack of subject matter jurisdiction and will remand for further proceedings.

## I. Background

Grand Union Supermarkets of the Virgin Islands ("Grand Union") filed the instant suit against H.E. Lockhart Management ("HELM") in the District Court of the Virgin Islands on February 26, 2001. The District Court's jurisdiction is disputed. The District Court of the Virgin Islands has general civil jurisdiction equivalent to that of a United States district court. 48 U.S.C. § 1612(a) (2001). Grand Union claims that the Court has diversity jurisdiction under 28 U.S.C. § 1332 (2001) because HELM is incorporated and has its principal place of business in the Virgin Islands, Red Apple (the corporate parent of Grand Union and a co-plaintiff) is incorporated and has its principal place of business in New York, and Grand Union is incorporated in Delaware and has no principal place of business. HELM claims, and the District Court held, that the Court has no diversity jurisdiction because Grand Union has its principal place of business in the Virgin Islands. We have jurisdiction under 28 U.S.C. § 1291 (2002) over the District Court's final order dismissing the case.

This suit arises out of the destruction of the St. Thomas store by Hurricane Marilyn in September 1995.[1] The parties do not dispute the relevant facts. Grand Union has been authorized to do business in the Virgin Islands since 1986 and has never conducted business in any other state. From 1986 to 1995, Grand Union operated one grocery store in St. Thomas, whose premises were leased from HELM, and one in St. Croix. Between September 1995, when Hurricane Marilyn hit, and March 1999, Grand Union continued to own the lease for the St. Thomas store. In March 1999, Grand Union relinquished the lease to HELM. By that time, Grand Union had sold its St. Croix store to Pueb-

---

1. This suit has a long, storied history whose details are not essential to the jurisdictional issue before us. The District Court's opinion amply details the parties' relationship and litigation. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Management, Inc.,* 171 F.Supp.2d 507, 508–511 (D.Vi.2001).

lo Supermarkets and no longer operated any grocery stores in the Virgin Islands.

As of February 2001, when it filed the instant action in the District Court, Grand Union had no assets in the Virgin Islands, had not entered into any contracts or made any sales or purchases for two years, and had not employed any workers or paid any wages or salaries, occupied any office space or owned any property, owned, rented, or possessed any office equipment or furniture, or maintained an address or telephone number in the Virgin Islands for six years.

Grand Union had, however, paid franchise taxes, filed corporate reports, and taken other affirmative steps to retain its authorization to do business in the Virgin Islands. Grand Union had not commenced formal dissolution procedures or instituted the statutory procedures to withdraw its application to do business. As of February 2001, Grand Union remained in good standing to do business in the Virgin Islands.

## II. Discussion

■ The question before us is whether Grand Union's taking steps to remain in good standing to do business in the Virgin Islands rendered the Virgin Islands its principal place of business for purposes of its citizenship. Our review over issues of jurisdiction is plenary. *Mennen Co. v. Atlantic Mutual Ins. Co.,* 147 F.3d 287, 290 (3d Cir.1998). We find that as of February 2001, Grand Union was not conducting any "business activity" and therefore conclude that it had no principal place of business and was a citizen of Delaware only. Therefore, as HELM is a citizen of the Virgin Islands, diversity between the parties is complete.

## A. The "Principal Place of Business" Test

■ Jurisdiction under 28 U.S.C. § 1332(a)(1) (2001) requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants. *Carden v. Arkoma Assocs.,* 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). For diversity purposes, citizenship of the parties is determined as of the time the complaint was filed. *Smith v. Sperling* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); *Midlantic Nat'l Bank v. Hansen,* 48 F.3d 693, 696 (3d Cir.1995).

■ A corporation is deemed a citizen "of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c) (2001). In *Hansen,* we held that a corporation conducting no business activities "has no principal place of business, and is instead a citizen of its state of incorporation only." *Hansen,* 48 F.3d at 696. There, we were presented with a corporation that both parties agreed had ceased all business activities as of the time the complaint was filed, and were asked to decide whether that corporation's *last* principal place of business was the corporation's principal place of business for diversity purposes. *Id.* We determined that it was not, and that such a corporation simply has no principal place of business. *Id.*

In so deciding, we rejected the approaches of the Second and Fifth Circuit Courts of Appeals, and a number of United States district courts, that have held that a corporation's last principal place of business was either dispositive or important to the question of principal place of business. *Id.* at 697. *See, e.g., Harris v. Black Clawson Co.,* 961 F.2d 547, 551 (5th Cir.1992) (considering the amount of time that had passed since the corporation last conduct-

ed business in the state); *William Passalacqua Builders v. Resnick Developers*, 933 F.2d 131, 141 (2d Cir.1991) (holding that a corporation is a citizen of the state in which it last transacted business). We found that our rule comported with Congressional intent that courts not "strain to locate a principal place of business when no such place in reality exists," and that our "bright-line" approach provided both certainty and clarity.[2] *Hansen*, 48 F.3d at 698.

In *Hansen*, we were not faced with the precise issue presented here, namely, what kinds of activity constitute "business activity." However, in *Hansen* we did note that a corporation that has "ceased any and all business activities" would be considered to have no principal place of business. *Id.* at 696 n. 4. Thus, our choice of words in *Hansen* seems to render the actual business activities undertaken by a corporation the focus of our inquiry.

■ For additional guidance on this question, we look to *Kelly v. United States Steel Corp.*, 284 F.2d 850, 854 (3d Cir. 1960), where we first interpreted the phrase "principal place of business." In *Kelly*, we determined that it is the "business by way of *activities* ... [that] indicate the principal place of business." *Id.* (emphasis added). We emphasized that a corporation's principal place of business is not "where ... final decisions are made on corporate policy," but rather where the corporation "conducts its affairs." *Id.* Looking at the facts before us, we found that even though U.S. Steel filed income taxes and made corporate policy decisions in New York, it conducted its business "relating to manufacturing, mining, transportation and general operation" in Pennsylvania, and employed more workers and owned more property there than in any

other state. *Id.* We therefore concluded that Pennsylvania, not New York, was its principal place of business. *Id.*

■ Taken together, *Hansen* and *Kelly* lead us to conclude that a corporation that is not actively engaged in any actual business activity in a state cannot have a principal place of business there. Maintaining corporate trappings or the qualifications required to potentially conduct business in the future is not enough; a corporation must *actually conduct business* for it to have a principal place of business.

Policy considerations support our conclusion. Federal diversity jurisdiction exists to neutralize local prejudices against foreign parties and ensure that the outcome of a trial is unaffected by the parties' affiliation with the locality. *Bank of the United States v. Deveaux*, 9 U.S. (5 Cranch) 61, 87, 3 L.Ed. 38 (1809) (Marshall, J.) ("However true the fact may be, that the tribunals of the states will administer justice as impartially as those of the nation, to parties of every description, it is not less true that the [C]onstitution itself either entertains apprehensions on this subject, or views with such indulgence the possible fears and apprehensions of suitors, that it has established national tribunals for the decision of controversies between ... citizens of different states."). The concept of a principal place of business rests on the idea that a corporation that centers its major operations, including plants and people, in a particular state should be considered a citizen of that state because it will not be subject to local hostility the way a foreign corporation might, and therefore need not seek the protection against local biases provided by the federal system. *See* S.Rep. No. 85–1830, at 3101– 3102 (1958) (stating that the "principal

---

2. HELM urges us to adopt the more flexible approach we specifically rejected in *Hansen*. We decline to do so.

place of business" provision was intended to avoid "the evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another State"). This rationale only works when the corporation has a business presence and is actually conducting business in the state. A corporation that is merely qualified to do so, but has no people or plants there, is in the same position as a foreign corporation in the eyes of the locality, and should therefore be given the same protection and allowed to sue in federal court.

### B. Application of *Hansen* and *Kelly*

Applying our conclusion that a corporation does not have a principal place of business if it does not actually conduct any business to the facts at hand, our task is relatively simple. Looking at the record before us, we search in vain for any actual business activity on the part of Grand Union. Grand Union has not been actually engaged in conducting any business since 1999, when it relinquished the lease to its St. Thomas store to HELM. As of February 2001, when it filed this complaint, it did not own any assets, own or rent any property, employ any workers, or even maintain an address in the Virgin Islands. The fact that Grand Union retained corporate records and paid franchise taxes to maintain the qualifications that would enable it to do business *in the future* does not mean that as of the time of filing, it was actually conducting any business.

Accordingly, we reject the District Court's conclusion that "business activity"

---

**3.** There is some dispute between the parties as to whether Grand Union was required to pay franchise taxes in order to maintain standing to sue in the Virgin Islands. However, we need not address this issue; even if Grand Union were not required to pay fran-

includes taking affirmative steps to maintain good standing and instituting suit in the Virgin Islands as contrary to our reasoning in *Hansen* and *Kelly*.[3] Making a corporate decision to maintain the qualification to do business at a later date simply does not constitute actual business activity. We are also not persuaded by the fact that the Virgin Islands is the only place in which Grand Union has ever conducted any business, for, as explained above, we have held that the last principal place of business is simply not a factor in our principal place of business analysis. In sum, we find no actual business activity on the part of Grand Union in February 2001.

### III. Conclusion

At the time it filed its complaint, Grand Union had no principal place of business and was a citizen of Delaware only. As there was complete diversity among the parties, we will reverse the District Court's dismissal of the case and remand for further proceedings.

---

chise taxes, the mere fact that it did so does not in itself make the Virgin Islands its principal place of business.