**GRAND UNION SUPERMARKETS OF THE VIRGIN ISLANDS, INC.,
and RED APPLE GROUP, INC., Plaintiffs
v.
H.E. LOCKHART MANAGEMENT, INC., Defendant
GRAND UNION SUPERMARKETS v. H.E. LOCKHART MGMT., INC.**
Civ. No. 2001-44

District Court of the Virgin Islands

Division of St. Thomas and St. John

January 3, 2005

KARIN A. BENTZ, ESQ., St. Thomas, U.S.V.I., IRA N. GLAUBER, ESQ., New York, N.Y., *For the plaintiffs*.

SIMONE R.D. FRANCIS, ESQ., St. Thomas, U.S.V.I., *For the defendant*.

MOORE, *District Judge*

## MEMORANDUM

(January 3, 2005)

The defendant has once again moved to dismiss the complaint and for summary judgment. For the reasons set forth below, I will deny the motion with respect to the fraud claim and will dismiss the claim for breach of the duty of good faith and fair dealing.

On remand from the Third Circuit Court of Appeals, H.E. Lockhart Management, Inc. ["HELM"] has filed a renewed motion to dismiss the complaint and for summary judgment.[1] The procedural history and underlying facts of this matter are set forth in detail in my November 19, 2001 Memorandum. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt.*, 171 F. Supp. 2d 507, 2001 U.S. Dist. LEXIS 19094 (D.V.I. 2001).

## I. BACKGROUND

Grand Union Supermarkets of the Virgin Islands, Inc. is a Delaware corporation authorized to do business in the Virgin Islands since 1986. Plaintiff Red Apple Group, a New York corporation, is Grand Union's corporate parent. In 1995, Grand Union operated two grocery stores in the Virgin Islands, one in St. Thomas, on premises owned by and leased from the defendant, H.E. Lockhart Management, Inc. ["HELM"],[2] and the other in St. Croix. On September 15, 1995, Hurricane Marilyn struck the Virgin Islands, completely destroying Grand Union's St. Thomas store. Under the terms of the lease, Grand Union was required to maintain standard fire and property insurance on the premises. Grand

---

[1] On November 19, 2001 this Court granted HELM's motion on the grounds that this Court lacked subject matter jurisdiction. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt.*, 171 F. Supp. 2d 507, 2001 U.S. Dist. LEXIS 19094 (D.V.I. 2001). On January 16, 2003, the Third Circuit Court of Appeals reversed the dismissal and remanded this matter to this Court. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Management, Inc.*, 316 F.3d 408, 2003 U.S. App. LEXIS 752 (3d Cir. 2003).

[2] As noted in an earlier opinion in a related case, the lease was executed in 1968 between Grand Union's predecessor in interest, the Grand Union Company, and the defendant's predecessor in interest, the H.E. Lockhart Development Corporation. The lease was assigned by Grand Union Company to Grand Union Supermarkets of the Virgin Islands, Inc. on September 14, 1986. *See H.E. Lockhart, Inc. v. National Union Fire Ins.*, 183 F.R.D. 455, 39 V.I. 447, 448 n.2, 1998 U.S. Dist. LEXIS 18684 (Nov. 23, 1998).

Union did not carry insurance as required by the lease, although it was self-insured through Red Apple, its parent company.

The destruction of the building and ensuing efforts on the part of HELM to ensure that Grand Union would promptly rebuild it as required by the lease precipitated a complete breakdown of relations between Grand Union and HELM. As a result, HELM notified Grand Union that it was terminating the lease due to Grand Union's failure to carry standard fire and property insurance as required under the terms of the lease or to promptly rebuild the premises. This in turn precipitated Grand Union's lawsuit filed on January 23, 1996, in Territorial Court, seeking, *inter alia*, declaratory judgment to continue the lease. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Management, Inc.*, Terr. Ct. Civ. No. 50/1996 (Jan. 23, 1996).

In February 1996, Red Apple and Grand Union were busy arranging for National Union Fire Insurance Company of Pittsburgh to issue an endorsement on a preexisting policy that extended coverage to the St. Thomas building retroactively for the period between October 1, 1994 and October 1, 1995 in the amount of $2 million, with $250,000 deductible. Red Apple/Grand Union paid a premium of $10,000 for the retroactive coverage. Red Apple/Grand Union further agreed not to make any claims against National Union arising out of losses from Hurricane Marilyn and to indemnify National Union for any bona fide claims made on the retroactive coverage. National Union issued a Certificate of Insurance to HELM naming HELM as the "Certificate Holder" that insurance in the amount of $2 million had been provided for the building covering the period from October 1, 1994 through October 1995.

When HELM counterclaimed in the Territorial Court case that Grand Union had breached the terms of the lease by failing to carry the required insurance coverage, Grand Union submitted the retroactive endorsement as proof that Grand Union had maintained the insurance policy as required by the lease. Grand Union, however, did not reveal to HELM or to the Territorial Court that, under the terms of the retroactive insurance policy, Grand Union would make no claims against the policy. Grand Union also did not mention that Red Apple/Grand Union had agreed to indemnify and hold National Union harmless for any claims arising out of the destruction that the newly insured building had already suffered from Hurricane Marilyn.

Armed with the Certificate of Insurance and frustrated by Grand Union's continued failure to rebuild, HELM submitted a claim in February 1997 against National Union's retroactive policy for the destruction of the building. When National Union denied payment on the claim, HELM invoked the diversity jurisdiction of this Court to sue National Union and Red Apple. *See H.E. Lockhart Mgmt., Inc. v. National Union Fire Ins.*, 183 F.R.D. 455, 39 V.I. 447, 1998 U.S. Dist. LEXIS 18684 (1998). In that earlier case, HELM sought declaratory relief for National Union's breach of the contract of insurance and for its bad faith and fraud in denying the claim submitted. Against Red Apple, HELM asserted claims for breach of contract and bad faith and fraud for refusing to release money from its self-insurance recovery fund for the reconstruction of the grocery store. Grand Union, being a citizen of this jurisdiction, was not named as a defendant in that earlier diversity action.

Red Apple and National Union, represented by the same attorney with both clients' consent under a joint defense agreement, moved to dismiss the action, asserting that HELM failed to name an indispensable party, i.e., Grand Union Supermarkets of the Virgin Islands, Inc., whose presence in the case would destroy diversity. The representations by counsel that Grand Union's principal, indeed, its only, place of business was in the Virgin Islands were not disputed, and on November 23, 1998, I found that Grand Union was an indispensable party whose presence in the litigation would destroy diversity. *See H.E. Lockhart,* 183 F.R.D. 455, 39 V.I. at 453, 1998 U.S. Dist. LEXIS 18684 at *11. I dismissed the case, and HELM filed a nearly identical action in the Territorial Court shortly thereafter, adding Grand Union as a party. *See H.E. Lockhart Mgmt., Inc. v. National Union Fire Ins. Co.*, Civ. No. 909/1998 (V.I. Terr. Ct. filed Dec. 22, 1998).

Not long after I dismissed HELM's 1997 action for lack of jurisdiction, National Union notified Red Apple and Grand Union by letter that it was disassociating itself from the position it had taken jointly with Grand Union in opposing HELM's claims against National Union under the retroactive endorsement. National Union also declared that it thereafter would not only deal directly with HELM regarding its claim against the policy proceeds but that it also would "take steps to satisfy" such claims. (*See* Def.'s Mem. Supp. Mot. Dismiss Ex. 4-D.) Following through with these intentions, National Union concluded negotiations with HELM on March 1, 1999, to settle HELM's claims in its 1998

Territorial Court action for $2.1 million plus $690,000 in interest, to be paid on behalf of HELM into an interest-bearing escrow account to be used only for reconstruction of the building, where the money remains to date. (*See id.* Ex. 5 ("Trust/Escrow Agreement"); Verified Complaint ¶ 31.)

On March 4, 1999, Red Apple, Grand Union and HELM executed a mediated settlement agreement under which Grand Union would pay HELM $35,000 and give up the approximately five years remaining on the lease. Further, "the parties agree[d] to dismiss all pending claims, including *Lockhart v. National Union* ([Terr. Ct.] Civ. [No.] 909/98), and to exchange full and comprehensive releases in favor of and by all parties, including Grand Union, Red Apple Group, Inc., National Union Fire Insurance Co. of Pittsburgh and H.E. Lockhart." (*See* Def.'s Mem. Supp. Mot. Dismiss Ex. 4A ("Mediated Settlement Agreement").) Red Apple and Grand Union participated with HELM in these mediation proceedings pursuant to a mediation ordered by the Territorial Court. Although National Union was a party to the suit and aware of the court-ordered mediation session, it chose not to attend. It is important to note that on March 4, 1999, when Red Apple, Grand Union and HELM executed their mediated settlement, National Union had already notified Red Apple and Grand Union that National Union was no longer represented by Grand Union's attorney and had declared to Red Apple and Grand Union that it intended to deal directly with HELM regarding HELM's claim against the policy proceeds and attempt to satisfy those claims. With this knowledge and understanding, and notwithstanding National Union's absence from those mediation proceedings, Red Apple and Grand Union nevertheless executed the mediated settlement notifying National Union or obtaining assurance that National Union would be bound by the settlement agreement. Without National Union's participation in the March 4th agreement, Red Apple and Grand Union accordingly were not released from their agreement to indemnify National Union for the claims the insurance company had paid to HELM. Grand Union received notice in the next day's mail that National Union had already agreed to settle HELM's claims for some $2.7 million.

The next month, National Union sued Red Apple, Grand Union, and John A. Catsimatidis, president of Red Apple Group, in New York state court to recover the $2.7 million in insurance proceeds and interest paid on behalf of HELM into the escrow account. See *National Union Fire*

*Ins. Co. v. Red Apple Group, Inc.*, No. 601073/99 (N.Y. Sup. Ct., filed Apr. 27, 1999). National Union's claims in that case have been narrowed to breach of the indemnification agreement. Red Apple/Grand Union's various counterclaims and affirmative defenses, including breach of contract, breach of duty of good faith, breach of fiduciary duty, fraud, and rescission, have in turn been reduced to approximately six affirmative defenses, including the defense that National Union had failed to notify its indemnitor, Red Apple/Grand Union, of the impending settlement. *See id.*, slip op. at 7, 14 (entered Aug. 8, 2000).

While the New York indemnification action against National Union was still pending, Grand Union and Red Apple filed this diversity lawsuit on February 26, 2001, asserting claims against HELM similar to their counterclaims in the New York action against National Union. Specifically, they allege here that HELM perpetrated an "unjust and dastardly act" on them and a fraud on the Territorial Court when it entered into the mediated settlement agreement without informing Grand Union or Red Apple that it had already settled its claim against National Union. To avenge this alleged fraud against themselves and the Territorial Court, Red Apple and Grand Union seek compensatory and punitive damages. They also include for good measure a claim for unjust enrichment and a contract claim for breach of the duty of good faith and fair dealing.

## II. DISCUSSION

### A. Standard for Motion to Dismiss

The Court limits its Rule 12(b)(6) inquiry into the sufficiency of Grand Union/Red Apple's claims as a statement for a claim for relief. *See Pepper-Reed Co. v. McBro Planning & Dev. Co.*, 19 V.I. 534, 564 F. Supp. 569 (1983). I cannot dismiss an action under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support" of the claims as pled which would entitle the plaintiff[s] to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). I must assume the factual allegations raised in the complaint to be true. *See Jenkins v. McKeithen*, 395 U.S. 411, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969). I am obligated to construe the complaint liberally in the plaintiffs' favor, giving Grand Union/Red Apple the benefit of all fair inferences which may be drawn from their allegations. *See Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989). "The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).

## B. Standard for Summary Judgment

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Sharpe v. West Indian Co.*, 118 F. Supp. 2d 646, 648 (D.V.I. 2000). Grand Union/Red Apple may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which reasonable jurors could find for the plaintiffs, Grand Union/Red Apple. *See Saldana v. Kmart Corp.*, 84 F. Supp. 2d 629, 631-32, 42 V.I. 358 (1999), *aff'd in part and rev'd in part*, 260 F.3d 228, 43 V.I. 361 (3d Cir. 2001). Only evidence admissible at trial shall be considered and I must draw all reasonable inferences therefrom in favor of Grand Union/Red Apple.

## C. Helm's Renewed Grounds for Dismissal

HELM's renewed motion presents four grounds for dismissal or summary judgment. First, it asserts that Grand Union lacks standing to maintain this action because Grand Union was not in "good standing" as a corporation when it instituted this action. Second, it contends that Grand Union and Red Apple have failed to state a cause of action upon which relief may be granted. Third, HELM argues that Grand Union and Red Apple failed to join an. indispensable party—National Union Fire Insurance Company of Pittsburgh—and its joinder as a defendant would divest this Court of subject matter jurisdiction. Fourth, HELM argues that Grand Union and Red Apple are collaterally estopped from relitigating the issue of fraud and breach of the duty of good faith and fair dealing inasmuch those issues already were disposed of in litigation in the New York Supreme Court.

### 1. Standing to Sue

HELM presents two arguments to show that Grand Union lacks standing to maintain this action. The first is that despite having received a Certificate of Good Standing from the Division of Corporation and

Trademark ["DCT"], Grand Union had not paid its franchise taxes in full for certain previous years going back to 1994 and thus cannot maintain an action. (Mem. Supp. Mot. Dismiss and Summ. J. at 13.) Second, HELM asserts that even though courts allow a corporation to become reinstated as a corporation in good standing before its claim is dismissed, the law requires dismissal if the reinstatement occurs after the statute of limitations has run. Neither argument applies here.

HELM argues that Grand Union was not in good standing with the DCT when it filed this action, and, because it did not cure those deficiencies with the DCT until after the statute of limitations had expired, it lacked standing to sue. I disagree and rule that, because this action sounds in tort, the corporate standing requirements do not apply.[3]

I similarly reject HELM's second assertion and hold that Grand Union/Red Apple filed this action within the statute of limitations period. In the United States Virgin Islands, fraud is governed by a two year limitations period under 5 V.I.C. § 31(5)(A). *See, e.g., Lawaetz v. Bank of Nova Scotia*, 653 F. Supp. 1278, 23 V.I. 132 (1987); *Tradewinds, Inc. v. Citibank, N.A.*, 1983 U.S. Dist. LEXIS 10237, 20 V.I. 152 (1983). The plaintiffs discovered what they claim is the alleged fraud—the "secret settlement agreement" between HELM and National Union—on March 5, 1999, when Grand Union's counsel received by mail a notice of voluntary dismissal of National Union as a defendant in the 1998 Territorial Court action. (Compl. ¶¶ 33-34). The plaintiffs filed this action on February 26, 2001, before the two-year statute of limitations for the alleged fraud expired on March 5, 2001, but before Grand Union re-established its good standing on May 17, 2001, by bringing itself

---

[3]    The parties disagree on whether Grand Union was in good standing with the DCT when it filed this action. HELM contends that Grand Union was not in good standing with the DCT and points to the March 21, 2001 affidavit of Lorna Webster, the DCT director, which testifies that as of that date, Grand Union was not in good standing with the DCT and that, among other franchise tax deficiencies, Grand Union failed to pay its franchise taxes for June 30, 1998. (Aff. of Lorna Webster in Supp of Mot. Dimiss; Ex. 1 to Mem. L. Supp. Mot. Dismiss). Grand Union contends that it was in good standing to sue. To support this contention, it has submitted a September 5, 2001 affidavit testifying that the affiant called the DCT prior to filing the complaint in the instant action and was advised that Grand Union was in good standing. (Aff. of Suzanne Grigg; Ex. I to Mem. Opp. Mot. Dismiss). Both parties have submitted a May 17, 2001 Certificate of Good Standing from the DCT in support of their views of the facts concerning Grand Union's corporate standing. As I have noted, this factual issue is moot.

current in its corporate franchise tax fees. (Pl.s Opp. To Def.'s Mot. To Def.'s Mot. To Dismiss, Ex. H.)[4]

■ Regardless of whether Grand Union was reinstated within the statute of limitations period, Grand Union can still bring this action. The statute barring a corporation delinquent in its franchise taxes from bringing suit, 13 V.I.C. § 533(a), does not to a corporation suing in tort. *See, e.g. Cirino v. Hess Oil Virgin Islands Corp.*, 384 F. Supp. 621, 624-625, 9 V.I. 518; *Meyers v. Manner Corp.*, 17 V.I. 608, 1980 U.S. Dist. LEXIS 8953 at *2 (September 26, 1980). Because Grand Union/Red Apple's complaint alleges fraud surrounding the March 4, 1999 Mediated Settlement Agreement and the March 5, 1999 Release and thus sounds in tort, Grand Union/Red Apple are barred from pursuing this action due to its delinquent franchise taxes. Accordingly, I will not dismiss Grand Union/Red Apple's fraud and unjust enrichment claims for lack of standing to sue.

### 2. Breach of the Duty of Good Faith and Fair Dealing

■ Grand Union/Red Apple has not stated a viable claim for breach of the duty of good faith and fair dealing. It is true that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." RESTATEMENT (SECOND) CONTRACTS § 205 (1981).[5] *See e.g. Jo-Ann's Launder Ctr. v. Chase Manhattan Bank,*

---

[4]    Thus, although Grand Union filed this action within the statute of limitations period, by the time a DCT issued a Certificate of Good Standing to Grand Union, the statute of limitations period had run. A corporation may not commence or maintain any action in any court if it has not paid its annual franchise tax last due. 13 V.I.C. § 533. Even though a corporation not in good standing to sue for failure to pay franchises taxes will be allowed a reasonable time to become reinstated, dismissal would be in order if the statute of limitations expired before the corporation restored itself to in good standing. *See Pemberton Sales & Service, Inc. v. Banco Popular De Puerto Rico*, 877 F. Supp. 961, 968 (D.V.I. 1994). If no factual issue existed—that is, if the affidavit of Suzanne Grigg and the March 21, 2001 affidavit of Lorna Webster did not conflict—and if this matter did not sound in tort, any claim falling under a two year statute of limitation period, would have to be dismissed. As discussed above, this is not the case.

   HELM tries to argue that *Pemberton* somehow abrogated section 533's inapplicablility to cases sounding in tort. (Reply Mem. in Supp. Mot. Dismiss and for Summ. J at 8.) In *Pemberton*, the statute of limitations expired before the tort claims were filed. That is not the case here. Grand Union/Red Apple filed this action on February 26, 2001, more than a week before the statute of limitations expired on March 5, 2001.

[5]    In the absence of local rules to the contrary, the United States Virgin Islands applies the restatements of law as approved by the American Law Institute. 1 V.I.C. § 4.

514

*N.A.*, 854 F. Supp. 387, 390, 29 V.I. 186 (1994). This rule, however, does not cover contract negotiations. Rather, it refers to the duty of good faith in the performance and enforcement of a contract. *See* RESTATEMENT (SECOND) CONTRACTS § 205(c). *See also In re Chambers Dev. Company, Inc.*, 148 F.3d 214, 227 n.10 (3d Cir. 1998).

■ Grand Union/Red Apples' claim for breach of the duty of good faith and fair dealing stems from the negotiation process that resulted in the Mediated Settlement Agreement and Release, not from the performance or execution of any contact. Essentially, plaintiffs are claiming that HELM breached its duty of good faith and fair dealing by the following actions leading up to the negotiation of the settlement agreements and misrepresentations or omissions during the negotiations leading up to these agreements:

- entering into a settlement agreement with National Union before settling with Grand Union/Red Apple (and thus the negotiations were not conducted in good faith since Grand Union/Red Apple was not aware of this) (Compl. ¶ 56);
- receiving a $2.7 million payment from National Union as payment for "identical claims" a few days before the Mediated Settlement Agreement and Release that Grand Union/Red Apple (again, without Grand Union/Red Apple's knowledge during the negotiation process) (*Id.*);
- intentionally making misrepresentations of material fact and failing to disclose material information to Grand Union and thereby inducing Grand Union to enter into the Release (*Id.* ¶ 37 and 41);
- failing to disclose to the mediator and Grand Union that it had settled its claims with National Union (*Id.* at ¶ 38.)
- giving Grand Union and Red Apple the impression that they were "achieving a global settlement" by entering into the Mediated Settlement Agreement with HELM when in fact they remained exposed to a $2.7 million claim for indemnification made by National Union (*Id.*);
- causing Grand Union/Red Apple to rely on HELM's misrepresentations, enter into the Mediated Settlement Agreement and Release, and give up their multi-million dollar claims against HELM (*Id.* at ¶ 44).

None of these facts relate to HELM's actual performance of a contract. Indeed, plaintiffs allege no breach of contract. Accordingly, I will dismiss Grand Union/Red Apple's claim for breach of the duty of good faith and fair dealing.

### 3. Collateral Estoppel or Issue Preclusion

■ The parties use the term "collateral estoppel," whereas the Restatement and this Court articulate the doctrine as "issue preclusion.

> The Restatement, Second, of Judgments deals with the preclusive effects of judgments in civil actions. "Preclusive effects" refers to limitations on the opportunity in a second action to litigate claims or issues that were litigated, or could have been litigated, in a prior action. In general terms, these limitations include the ... rule of issue preclusion, sometimes referred to as collateral estoppel, ... [namely] that a party ordinarily may not relitigate an issue that he fully and fairly litigated on a previous occasion.

RESTATEMENT (SECOND) OF CONFLICTS ch. 1, introduction, scope, at 1 (1971) (emphasis added). For collateral estoppel to apply, the following must be present: (1) the issue decided in the prior case must be the same as the one presented in the later action; (2) there must be a final decision on the merits; and (3) the party against whom the doctrine is asserted must have been a party or in privity with a party to the prior adjudication and have had a full and fair opportunity to litigate the issue in question in the prior action. *See, e.g., DICI v. Commonwealth of Pennsylvania*, 91 F.3d 542, 548 (3d Cir. 1996); *Charles v. Daily News Publ'g Co.*, 29 V.I. 34, 36 (Terr. Ct. 1994).

■ I find that the first prong is satisfied here as the fraud issue against HELM in this matter is as the same the fraud issue against National Union in the New York action. The New York court premised its fraud claim dismissal on the law that in the absence of a fiduciary relationship between the parties, a failure to disclose does not give rise to an action for fraud "unless one party's superior knowledge of the essential facts render the transaction without disclosure inherently unfair." (June 8, 2000 Order in *National Union v. Red Apple Group, et al.*, Supreme Court of the State of New York, Index No. 601073/99, at 11 *citing Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 327, 643 N.Y.S.2d 33 (1st Dept.), *rearg denied*, 232 A.D.2d 968, 656 N.Y.S.2d 857 (1996), *appeal*

*withdrawn*, 89 N.Y.2d 983, 678 N.E.2d 1357, 656 N.Y.S.2d 741 (1997).) In its December 16, 1998 letter, National Union put Grand Union on notice that it would deal directly with HELM with respect to claims against National Union's policy proceeds. The plaintiffs, therefore, had every reason to assume that HELM and National Union were indeed negotiating between themselves. Indeed, National Union's failure to participate in the mediated settlement should have put plaintiffs on notice to inquire into the status of those negotiations and why National Union chose not to participate in the March 1999 mediation, which resulted in the March 4, 1999 Mediated Settlement Agreement. Just as in the New York case, there was no fiduciary relationship between HELM and plaintiffs and HELM's earlier settlement with National Union did not constitute superior knowledge of essential facts that, without disclosure, would render the March 4, 1999 Mediated Settlement Agreement inherently unfair. Although the agreement provided that HELM's lawsuit against National Union would be dismissed and that comprehensive releases would be made "in favor of and by all the parties," including National Union, I can see nothing in the document that would reasonable give Grand Union the impression that HELM would not submit any insurance claims to National Union for which National Union could seek indemnification from Grand Union. When the plaintiffs, who were represented by competent counsel, signed the agreement without the presence or signature of National Union, HELM reasonably could have assumed that the plaintiffs and National Union had a separate under-standing. Due to the identity of the New York fraud claim and the instant fraud claim, the first element of issue preclusion/collateral estoppel is satisfied.

■ Similarly, the second prong, a final decision on the merits, is satisfied. Red Apple/Grand Union's counterclaim for fraud was dismissed on the merits by the New York court. Finally, the plaintiffs, against whom the rule is asserted, were parties to the New York adjudication and had a full and fair opportunity to litigate the issue in question in that case. Accordingly, I will dismiss the fraud claim.

### 4. National Union Is Not An Indispensable Party

■ Federal Rules of Civil Procedure Rule 19 requires a two part test to determine whether a matter should be dismissed for failure to join an indispensable party. First, Rule 19(a) requires the court to determine

517

whether the party's joinder is compulsory if feasible. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993). Second, if the party's joinder is compulsory, the court is to consider the factors listed in Rule 19(b) to determine whether the party is indispensable. *Id.* Because I find that National Union is not a party whose presence in the lawsuit is compulsory if feasible, I need not consider the factors of Rule 19(b).

Rule 19(a) requires joinder of a person if, in that person's absence (1) the parties to the action cannot be accorded complete relief or (2) the person claims an interest relating to the subject of the action and is so situated that as a practical matter disposition of the action in that person's absence would (i) impair or impede the person ability to protect that interest or (ii) leave any of the parties to the lawsuit with double, multiple or inconsistent obligations.

Both HELM and Grand Union/Red Apple can be accorded complete relief in National Union's absence from this action. Under Rule 19(a)(1), a person is necessary to the litigation if in the person's absence complete relief cannot be accorded among those already parties. Because Grand Union/Red Apple's fraud claim against National Union in the New York action has been dismissed, proceeding in this lawsuit solely against HELM would not prejudice Grand Union/Red Apple since any fraud against National Union would anyway be barred by res judicata. *See* RESTATEMENT (SECOND) JUDGMENTS § 24 (1982). National Union's absence from this lawsuit will not force HELM to defend itself in two lawsuits. Therefore both HELM and Grand Union/Red Apple can be accorded full relief in this matter even without National's presence in this lawsuit.

Even if National Union were a necessary party, it is not an indispensable party under Rule 19(b). Joint tortfeasors are not indispensable parties. *See, e.g., Field v. Volkswagenwerk AG*, 626 F.2d 293, 298 n.7 (3d Cir. 1980); *Brady v. Burtt*, 979 F. Supp. 524, 527 (*citing Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194 (6th Cir. 1983). *See also* WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE, CIVIL 3D § 1623 (2001) ("Under generally accepted principles of tort law, the liability of joint tortfeasors is both joint and several. The 1966 amendment of Rule 19 does not alter the long standing practice of not requiring the addition of joint torfeasors. Thus, plaintiff may sue one or more of them without joining the others.").

The gravamen of Grand Union/Red Apple's complaint—HELM's alleged fraud surrounding the March 4, 1999 Mediated Settlement Agreement and the March 5, 1999 Release—sounds in tort. Accordingly, National Union, as a potential joint tortfeasor, is not an indispensable party. Therefore Grand Union/Red Apple need not join National Union.

### III. CONCLUSION

Grand Union/Red Apple may bring this action whether or not Grand Union was current in its franchise tax obligations since the law barring a corporation delinquent in its franchise taxes from bringing suit does not apply to corporations suing for tort. I will dismiss plaintiffs' claim for breach of the duty of good faith and fair dealing because such a claim relates to the performance of a contract and no contract has been alleged here. Plaintiffs are collateral estopped from bringing this action because the fraud claims in this action have already been litigated in the New York action. Finally, National Union is not an indispensable party. Accordingly, I will dismiss the claims for breach of duty and fair dealing and for fraud. An appropriate order follows.